EASTERN STATES HEALTH & WELFARE FUND; ILGWU Health Services Plan; Health and Vacation Fund of the Amalgamated Ladies Garment Cutters Union; Local 10, Unite; and Health and Welfare Fund of Local 99 Unite, Plaintiffs,

v.

PHILIP MORRIS, INC.; R.J. Reynolds Tobacco Co.; RJR Nabisco Holding Corp.; RJR Nabisco, Inc.; American Tobacco Company; Brown & Williamson Tobacco Corp.; B.A.T. Industries, PLC; British American Tobacco Company, Ltd.; Liggett & Myers, Inc.; Lorillard Tobacco Co., Inc.; United States Tobacco Co.; The Council for Tobacco Research—U.S.A., Inc.; The Tobacco Institute, Inc.; Smokeless Tobacco Council, Inc.; and Hill & Knowlton, Inc., Defendants.

PUERTO RICAN ILGWU HEALTH & WELFARE FUND, Plaintiff,

v.

PHILIP MORRIS, INC., et al., Defendants.

DAY CARE COUNCIL—LOCAL 205 D.C. 1707 WELFARE FUND, Plaintiff,

v.

PHILIP MORRIS, INC., et al., Defendants.

IBEW LOCAL 363 WELFARE FUND, Plaintiff,

v.

PHILIP MORRIS, INC., et al., Defendants.

LONG ISLAND REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, Plaintiff,

v.

PHILIP MORRIS, INC., et al., Defendants.

LOCAL 840, INTERNATIONAL BROTHERHOOD OF TEAMSTERS HEALTH & INSURANCE FUND, Plaintiff,

v.

PHILIP MORRIS, INC., et al., Defendants.

LOCAL 1199 NATIONAL BENEFIT FUND FOR HEALTH & HUMAN SERVICES EMPLOYEES, Plaintiff,

v.

PHILIP MORRIS, INC., et al., Defendants.

IBEW LOCAL 25 HEALTH & BENEFIT FUND, Plaintiff,

v.

PHILIP MORRIS, INC., et al., Defendants.

LOCAL 1199 HOME CARE INDUSTRY BENEFIT FUND, Plaintiff,

v.

PHILIP MORRIS, INC., et al., Defendants.

LOCAL 138, 138A AND 138B INTERNATIONAL UNION OF OPERATING ENGINEERS WELFARE FUND, Plaintiff,

v.

PHILIP MORRIS, INC., et al., Defendants.

Nos. 97 Civ. 7346(SS), 97 Civ. 8462(SS) and 97 Civ. 9395(SS)–97 Civ. 9402(SS).

United States District Court, S.D. New York.

June 29, 1998.

Zwerling, Schachter & Zwerling, New York City, Joseph Lipofsky, Robert S. Schachter, Dan Drachler, Natalie T. Blaney, Meyer, Suozzi, English & Klein, P.C., Mineola, NY, Michael A. Ciaffa, G. Oliver Koppell, for All Plaintiffs.

Levy, Ratner & Behroozi, P.C., New York City, Law Office of David Paul Horowitz, New York City, David Paul Horowitz, for Plaintiffs Local 1199 National Benefit Fund for HHS Employees and Local 1199 Home Care Industry Benefit Fund.

Wachtell, Lipton, Rosen & Katz, New York City, Peter C. Hein, Barbara Robbins, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, Paul K. Stecker, Paul F. Jones, for Defendant Philip Morris, Inc.

Kirkland & Ellis, New York City, Marjorie Press Lindblom, Peter A. Bellacosa, Chicago, IL, David M. Bernick, Washington, DC, Kenneth N. Bass, Paul B. Taylor, for Defendant Brown & Williamson Tobacco Corp. and American Tobacco Co.

Jones, Day, Reavis & Pogue, New York City, Robert W. Gaffey, Michael S. Chernis, Washington, DC, Robert F. McDermott, Jr., Donald B. Ayer, for Defendants R.J. Reynolds Tobacco Co., RJR Nabisco Holdings Corp., and RJR Nabisco, Inc.

Simpson Tracher & Bartlett, New York City, Mark Cunha, Adam Stein, for Defendants B.A.T. Industries plc and British–American Tobacco Co. Ltd.

Chadbourne & Parke, New York City, Thomas J. McCormack, Robert Pruyne, for Defendant British–American Tobacco Co. Ltd.

Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, New York City, Alan E. Mansfield, Shook, Hardy & Bacon, LLP, Kansas City, MO, Robert E. Northrip, Bruce R. Tepikian, Samuel B. Sebree, for Defendant Lorillard Tobacco Co.

Skadden, Arps, Slate, Meagher & Flom LLP, New York City, Peter J. McKenna, Eric S. Sarner, Mark S. Cheffo, for Defendant United States Tobacco Co.

Seward & Kissel, New York City, Anthony Mansfield, for Defendant The Tobacco Institute, Inc.

Debevoise & Plimpton, New York City, Steven Klugman, for Defendant Council for Tobacco Research—U.S.A., Inc.

Kasowitz, Benson, Torres & Friedman, New York City, Michael M. Fay, for Defendant Liggett Group, Inc.

Davis & Gilbert, New York City, Bruce M. Ginsberg, Michael C. Lasky, for Defendant Hill & Knowlton, Inc.

Jacob, Medinger & Finnegan, LLP, New York City, Barry S. Schaevitz, for Defendant Smokeless Tobacco Council, Inc.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

The motion before the Court in these ten related cases represents a small but procedurally complex skirmish in the tobacco wars raging throughout the courts of this country. The plaintiffs are various employee benefit plans (collectively referred to hereinafter as the "Funds") which seek to recoup from the defendants, cigarette manufacturers and tobacco industry organizations (collectively referred to hereinafter as the "Companies"), medical and health care benefits which the Funds claim they have paid to their beneficiaries because of the allegedly tortious conduct of the Companies. Plaintiffs originally filed these actions in New York State Supreme Court but the defendants removed the actions to this Court, claiming federal question jurisdiction. The Funds now move to remand the actions to the state court on the ground that this Court lacks subject matter jurisdiction. For the reasons that follow, the Court grants the Funds' motion to remand.

### BACKGROUND

The complaints in these cases allege the following facts. Each of the plaintiffs is an employee benefit plan governed by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., and are established to provide health-care benefits to participants and their dependents. The Funds assert various common-law tort and statutory causes of action stemming from the Companies' marketing of tobacco products. The first twelve claims allege torts committed directly against the Funds themselves—e.g., that the Companies' alleged fraudulent concealment of the health hazards of tobacco use resulted in the Funds' failure to take actions to discourage smoking among its participants and in correspondingly higher benefit payments to those participants.

The claim which provides the alleged federal jurisdictional basis is the thirteenth cause of action of the Complaint, entitled "Subrogation." Although the details of the parties' arguments will be discussed in much greater detail below, in essence the dispute

over subject matter jurisdiction is that the Funds claim that they have a cause of action, arising solely under New York state law, for subrogation of the tort claims which their plan participants could assert against the Companies. That is, as subrogees of their participants, the Funds claim a state-law based right to recover the medical costs of their participants attributable to the Companies' allegedly tortious conduct towards those participants, up to and including the amount actually paid out by the Funds to the beneficiaries.

The Funds' actions were filed in the Supreme Court of New York, New York County. The Companies removed each case to this district, and the Funds have now moved, pursuant to 28 U.S.C. § 1447(c), to remand for lack of subject-matter jurisdiction.[1]

### DISCUSSION

Under 28 U.S.C. § 1441(a), any action filed in state court "of which the district courts of the United States have original jurisdiction" may be removed by the defendants to federal district court, assuming the procedural requirements of 28 U.S.C. § 1446, not in dispute here, are met. The question, in other words, is whether the case originally could have been filed in federal court. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir.1998). There being no dispute about the propriety of the Companies' removal procedure, the only dispute to be resolved by this Court is whether there is subject matter jurisdiction over these cases. Defendants do not assert that diversity of citizenship is present in any of these cases; therefore, federal question jurisdiction is required for removal. *See id.* The Companies, as the parties asserting federal jurisdiction, bear the burden of establishing any facts necessary to support removal. *See Gilman v. BHC Securities, Inc.*, 104 F.3d 1418, 1421 (2d Cir.1997).

The Companies make two arguments for federal question jurisdiction. First, they assert that the resolution of the Funds' subrogation claims depends upon this Court's answering several substantial issues of federal law. Second, the Companies claim that ERISA so completely preempts New York subrogation law that any subrogation claim necessarily arises under federal law and is removable on that basis.

The Companies do not contest that the first twelve causes of action arise under state law, not federal; only the subrogation action is asserted as a possible federal-law claim. As will be discussed, the Funds, for their part, have completely disclaimed any federal cause of action for subrogation and have chosen instead to rely solely on the validity of their state-law claim. The Companies assert in arguing this motion, and almost certainly will continue to argue after this jurisdictional question is decided, that a state-law subrogation claim is preempted by ERISA and must be dismissed.

There are thus two possible scenarios following this motion to remand. If the Court decides to remand, then the New York courts will decide all thirteen claims, including the question of whether ERISA preempts the state law of subrogation. If the Court decides not to remain, then this Court will determine the preemption question; if the state-law cause of action is determined to be preempted, then the Funds' disclaimer of a federal subrogation claim will require dismissal of the thirteenth count, and if the state law cause of action is not preempted, of course, the state-law subrogation claim remains. In either case, only state law causes of action will remain, and this Court is almost certain to decline to exercise supplemental jurisdiction. In other words, these cases look to be heading back to state court under any conceivable scenario.

The only issue at stake in this motion, then, is which court—federal or state—will decide whether the Funds' New York subrogation claim is preempted by ERISA. *See* Stanley Blumenfeld Jr., *Artful Pleading and*

---

1. In an Order dated January 6, 1998, these cases were deemed related to a set a of cases currently before Judge Shira A. Scheindlin. In that Order, I retained my individual cases for purposes of deciding any remand motions that would be filed; however, for discovery and all other purposes these cases are now all before Judge Scheindlin.

*Removal Jurisdiction*, 35 UCLA L.Rev. 315, 354–55 (1987). The Court does not minimize the importance of this question, at least to the parties. The parties may very well feel that the courts of New York and the federal courts differ in their disposition towards deciding federal preemption questions. Regardless of the accuracy of that view, Congress has given certain defendants the right to invoke the jurisdiction of the federal courts and a converse right to certain plaintiffs not to be subject to such jurisdiction, and it is not for this Court to assess the motives for invoking either right. The Court is mindful, however, that it must attempt to avoid mooting the only question at stake in this motion by passing upon the merits of the preemption question on the way to deciding the jurisdictional issue.

## I.  Federal Removal Jurisdiction

The general principles of federal question removal jurisdiction are easy to state, although their precise contours are less clear. The federal-question jurisdiction statute, 28 U.S.C. § 1331, gives the district courts original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." The scope of this statutory grant of jurisdiction (as opposed to that found in Article III of the Constitution[2]) has, virtually from its inception, been limited by the basic principle of the "well-pleaded complaint rule": "Federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank,* —— U.S. ——, ——, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998) (quoting *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987)).

■  The well-pleaded complaint rule implies several corollary principles which are crucial to this motion. First, pursuant to the well-pleaded complaint rule, it is well-settled that because "a defense is not part of a plaintiff's properly pleaded statement of his or her claim," *Rivet,* —— U.S. at ——, 118 S.Ct. at 925, federal question jurisdiction may not be predicated on an anticipated federal defense, *see Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983). Concomitantly, because removal is only proper if the suit could have been filed in federal court originally, "a case may not be removed to federal court on the basis of a federal defense." *Rivet,* —— U.S. at ——, 118 S.Ct. at 925.

■  Second, by determining jurisdiction solely on the basis of the plaintiff's complaint, the well-pleaded complaint rule makes the plaintiff "master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *see also Merrell Dow,* 478 U.S. at 809 n. 6, 106 S.Ct. at 3233 n. 6 ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced"). Thus, even if both federal and state law provide a remedy to the plaintiff, the plaintiff can avoid federal jurisdiction by pleading state law—at the price, of course, of foregoing the federal remedies. *See Caterpillar,* 482 U.S. at 394–95, 107 S.Ct. at 2431.

It is this second principle that makes removal jurisdiction, contrary to the defendant's assertion, a somewhat different animal than original federal question jurisdiction—i.e., where the plaintiff files originally in federal court. When a plaintiff files in federal court, there is no clash between the principle

---

**2.** "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U.S. Const. art. III, § 2. The constitutional grant of jurisdiction—that is, the outer limit of the jurisdiction which Congress may vest in the federal courts—has been construed broadly to cover "all cases in which a federal question is 'an ingredient' of the action." *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 807, 106 S.Ct. 3229, 3231–32, 92 L.Ed.2d 650 (quoting *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 823, 6 L.Ed. 204 (1824)); *see also id.* 478 U.S. at 807–08, 106 S.Ct. at 3232 ("[W]e have long construed the statutory grant of jurisdiction as conferring a more limited power.").

that the plaintiff can control the complaint— and therefore, the choice between state and federal forums—and the principle that federal courts have jurisdiction over federal questions; the plaintiff, after all, by filing in a federal forum is asserting reliance upon both principles, and the only question a defendant can raise is whether plaintiff has a federal claim.

On the other hand, when plaintiff files in state court and purports to only raise state law claims, for the federal court to assert jurisdiction it has to look beyond the complaint and partially recharacterize the plaintiffs claims—which places the assertion of jurisdiction directly at odds with the principle of plaintiff as master of the complaint. It is for this reason that removal jurisdiction must be viewed with a somewhat more skeptical eye; the fact that a plaintiff in one case chooses to bring a claim as a federal one and thus invoke federal jurisdiction does not mean that federal *removal* jurisdiction will lie in an identical case if the plaintiff chooses not to assert a federal claim.

■■■ Both of the above principles—that a federal defense will not support jurisdiction, and that the plaintiff can avoid federal jurisdiction by pleading state-law claims only—give way to one very limited exception—the "complete preemption doctrine." A claim that the state law upon which plaintiff relies in his or her complaint is preempted by federal law is normally a defense which will not support federal jurisdiction. *See Caterpillar*, 482 U.S. at 392–93, 107 S.Ct. at 2430. However, in certain circumstances,

> the preemptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded *complaint rule.*" Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Id.* at 393, 107 S.Ct. at 2430 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). The requirements for complete preemption to obtain will be discussed in greater detail below, but for now suffice it to note that unless those requirements are met, a claim that state law is preempted by federal law is a defense which will not support removal.

■ In conjunction with the well-pleaded complaint rule, there are two principles for determining whether the claims in the well-pleaded complaint "arise under" federal law so as to support federal question jurisdiction. The first is Justice Holmes' statement that "a suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916); *see also Franchise Tax Board*, 463 U.S. at 8–9, 103 S.Ct. at 2846. Thus, a complaint which pleads a federal cause of action will support federal jurisdiction. In addition to this first principle, which describes the "vast majority of cases" falling within federal district court jurisdiction, *see Franchise Tax Board*, 463 U.S. at 9, 103 S.Ct. at 2846, is a second, broader principle: "a case may arise under federal law 'where the vindication of a right under state law necessarily turned on some construction of federal law.'" *Merrell Dow*, 478 U.S. at 808–09, 106 S.Ct. at 3232 (quoting *Franchise Tax Board*, 463 U.S. at 9, 103 S.Ct. at 2846); *see also Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199, 41 S.Ct. 243, 245, 65 L.Ed. 577 (1921). The incorporated federal question must, however, be "substantial" to support federal jurisdiction. *See Merrell Dow*, 478 U.S. at 813, 106 S.Ct. at 3234; *Franchise Tax Board*, 463 U.S. at 13, 103 S.Ct. at 2848 (federal-question jurisdiction when "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims").

Finally, the above principles of federal jurisdiction are by no means bright-line rules. Rather, the Supreme Court has repeatedly stressed "the need for careful judgments about the exercise of federal judicial power in

an area of uncertain jurisdiction." *Merrell Dow,* 478 U.S. at 814, 106 S.Ct. at 3235; *see also id.* at 810, 106 S.Ct. at 3233 ("[I]n exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system."); *Franchise Tax Board,* 463 U.S. at 20, 103 S.Ct. at 2852 ("We have always interpreted ... 'the current of jurisdictional legislation ...' with an eye to practicality and necessity") (quoting *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 673, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950)). With these principles in mind, the Court now turns to see if the Companies have met their burden of demonstrating that removal is proper in these cases.

A roadmap of the discussion to come will be helpful. First, the Court will look at the plaintiffs' Complaint to see whether it asserts a federal question, unaided by any anticipated preemption defense. The Companies assert that it does, on two grounds. First, the Companies note that the basis of the subrogation claim—that is, whether it is asserted under federal or state law—is unstated on the face of the Complaint, and they urge this Court to resolve this ambiguity in favor of federal jurisdiction, either because other language in the Complaint makes it clear that a federal claim is being pled or because the preemption of state subrogation law by ERISA means that the plaintiffs must be pleading a federal claim. The Court rejects these arguments, primarily in light of the plaintiffs' express disclaimer of any federal subrogation claim but also because principles of removal jurisdiction warrant resolution of ambiguity against a finding of jurisdiction, not in favor of it.

Second, the Companies argue that, because ERISA must preempt state subrogation laws insofar as they relate to ERISA plans, several substantive issues—including whether there is any subrogation right at all—raised by the plaintiffs' subrogation claim must be resolved by reference to federal law, thus injecting the necessary federal questions into the plaintiff's Complaint. The Court rejects these arguments because the state law subrogation claim asserted by the Funds does not require the references to federal law asserted by the Companies; rather, the Companies' asserted federal issues are all preemption defenses which cannot support federal jurisdiction under the well-pleaded complaint rule.

The Court does address one argument not expressly raised by the Companies—namely, that as an element of the New York subrogation claim, the Funds must prove their obligation to make payments to the purported subrogors (i.e., the plan participants), an obligation which arises from the terms of the ERISA plans and thus is a matter of federal law. This argument will not support jurisdiction, however, because the federal question, though present in the well-pleaded complaint, is insufficiently substantial.

Next, the Court turns to the "complete preemption" doctrine—that is, whether ERISA has so completely preempted the plaintiffs' subrogation claim that it must be said to arise under federal law regardless of the plaintiffs' reliance on state law principles only. The Court rejects this argument as well, because the subrogation claim raised by the Funds does not fall within the scope of the civil enforcement provisions of ERISA § 502, which is a necessary prerequisite to a finding of complete preemption. The Court now discusses each of these arguments in greater depth.

## II. *Substantial Federal Question*

■ Defendants first assert that the plaintiff's subrogation cause of action poses a substantial federal question. They argue that, because the complaint is silent as to the source of the plaintiffs' subrogation rights, this Court is free to determine under which law the subrogation rights "really" arise for purposes of federal question jurisdiction. The defendants then contend that a federal common law of subrogation preempts any state law subrogation rights that may exist, and that therefore the Court must construe the (unstated) basis of the plaintiffs' subroga-

tion rights to be federal common law, thus supporting federal question jurisdiction.

As noted earlier, it is well-settled law that, short of complete preemption, federal preemption of a state law cause of action is a defense which will not support federal question jurisdiction because it does not appear on the face of the plaintiff's well-pleaded complaint. Defendants maintain, however, that the silence in the complaint as to whether federal or state law provides the subrogation claim makes the well-pleaded complaint rule inapplicable. For this proposition they rely on *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22 (2d Cir.1988). *Derrico,* however, created no such exception to the well-pleaded complaint rule.

In *Derrico*, the plaintiff sought to enforce the terms of an expired collective bargaining agreement (CBA) not by relying on the CBA itself but rather through the more subtle tactic of asserting that "an expired CBA defines the status quo for purpose of evaluating the duty to bargain in good faith" and that therefore an implied contract arose whose terms were identical to the expired CBA; this implied contract was assertedly enforceable as a matter of state contract law, and plaintiff sought remand to state court on the ground that he raised in the complaint a purely state law cause of action. Although the plaintiff did not expressly state that the expired-CBA-as-status-quo principle was one of federal law, the Second Circuit found that the complaint's "references to the 'collective bargaining process' left no doubt that the source was federal labor law" and that any possible ambiguity was dispelled by the plaintiff's counsel when he asserted that the status-quo principle he relied upon had its origin in various decisions of the National Labor Relations Board. *See id.*

The *Derrico* court concluded that the plaintiff's complaint, bolstered by the assertions of counsel, had clearly invoked principles of federal law. Most importantly, the *Derrico* court did not engage in an analysis of whether the principles relied upon by plaintiff could have only existed under federal law because of preemption. Instead the court resolved the ambiguity in the complaint by focusing on what the plaintiff intended to plead.[3] In other words, the *Derrico* court determined that the plaintiff's complaint had *in fact* relied upon federal law, not that the status-quo principle stated in the complaint was a federal one as a matter of law. There is no exception to the well-pleaded complaint rule to be found here; *Derrico* simply stands for the unexceptional proposition that courts must subject complaints to reasonable construction to determine what claims are being asserted, and that a complaint which is clear in its reliance on federal law raises a federal question notwithstanding its failure to unambiguously assert the federal nature of its claim.

Here, the complaints are admittedly unclear on the source of the subrogation rights asserted, but unlike *Derrico*, principles of subrogation are not clearly federal law; if anything, subrogation to various state law causes of action would seem to more logically invoke principles of state law.[4] At best, a fair construction of the language in the complaint is in equipoise as to the federal or state nature of the claim. Like *Derrico*, however, any ambiguity has been resolved by the plaintiffs' moving papers and the assertions of plaintiffs' counsel to this Court that they are expressly relying solely upon state law for their subrogation rights and foregoing any subrogation claims they may have under federal law. *See* Pl.Mem. at 7 ("Plaintiffs seek recovery only on New York statutory and common law grounds"); *id.* at 8 ("Plaintiffs' subrogation claim is brought in common law and is unrelated in substance to ERISA"); Pl. Reply Mem. at 2–4 (grounding claim in New York common law); Tr. of Oral Arg., 2/5/98, at 14 ("Court: So are you foregoing your federal subrogation rights now

---

3. Notably, the plaintiff did not dispute that the "origin" of the implied contract was federal law, but sought remand on the ground that the right to enforce an implied contract arose under state law. *See Derrico* 844 F.2d at 28.

4. The Court rejects defendants' suggestion that the various references in the complaint to the Funds' status as ERISA plans "mak[e] clear" that the source of the subrogation claims is ERISA.

and forever in this litigation? [Plaintiffs' Counsel]: Yes."). *See Design Science Toys, Inc. v. McCann,* 931 F.Supp. 282 (S.D.N.Y. 1996) (plaintiff's disclaiming of federal claims in otherwise ambiguous complaint given effect; case remanded).

Furthermore, even if this Court were unable to rely upon plaintiff's representations to resolve the ambiguity, principles of federal jurisdiction warrant construction of ambiguous complaints against removal. Because Congress has expressed a policy limiting removal to specifically defined cases, the removal statutes are to be strictly construed in favor of remand. And while the Companies are correct that it is construction of the plaintiff's complaint, not the removal statutes, that is at issue here, the principle of construction against removal extends to ambiguous pleadings as well. *See Greenshields v. Warren Petroleum Corp.,* 248 F.2d 61, 64 (10th Cir.1957) ("Since § 1441(c) was designed to restrict, not enlarge, removal rights all doubts arising from defective, ambiguous and inartful pleadings should be resolved in favor of the retention of state court jurisdiction"). Moreover, the principle that the plaintiff is master of the complaint also counsels in favor of construction in accordance with the representations of the plaintiffs, particularly when, as noted, they have expressly foregone their right to assert a federal subrogation claim. *Cf. Crowe v. Coleman,* 113 F.3d 1536, 1543 (11th Cir.1997) ("Plaintiffs are entitled to the construction most favorable to remand.... If removal is doubtful, we remand the case"); *Paden v. Board of Educ.,* No. 88 C 5891, 1988 WL 105353, at *1 (N.D.Ill.1988) ("The Court will not force plaintiff to pursue a federal constitutional claim which she does not wish to raise where her complaint does not clearly state such a claim") (reading ambiguous complaint in accord with plaintiff's asserted intent and re-

manding for lack of federal question). Finally, to the extent that the determination of what the complaint asserts can be considered a factual question, the burden falls upon the Companies to establish the facts that support federal jurisdiction; if the arguments for construction are in equipoise, it is the Funds' construction which must prevail.

Defendants asserted in a letter brief submitted after oral argument that allowing the plaintiffs' post-complaint representations as to foregoing a federal right of subrogation runs counter to the principle that removal jurisdiction is judged by the Complaint at the time of removal, and that voluntary dismissal of federal claims after removal does not divest the federal court of removal jurisdiction otherwise properly invoked. *See, e.g., Ching v. Mitre Corp.,* 921 F.2d 11, 13 (1st Cir.1990). This argument is unavailing here.

The Funds did not clearly assert a federal claim which would support jurisdiction; rather, the complaint asserted an ambiguous claim which this Court, as noted above, construes to be one raising a claim under the state law of subrogation. Thus, unlike *Ching,* in which the complaint undisputedly stated a federal claim which was later dismissed after removal, *see id.* at 13,[5] the construction of the complaint by this Court in effect means that the plaintiffs never raised a federal claim at all, but rather that the subrogation claim is deemed to have been a state one from its inception. This is highlighted by the fact that there has been no amendment to the complaint; the original complaint required some interpretation by this Court, but that hardly makes these cases unique. The fact that the Court has had to construe the complaint, and that a different construction might have been possible, does not make this construction tantamount to a post-removal amendment.[6] The Court therefore in-

---

5. The Companies also rely on *Bruan, Gordon & Co. v. Hellmers,* 502 F.Supp. 897, 901 (S.D.N.Y. 1980), in which Judge Motley held that the plaintiff's complaint had clearly referenced federal securities law and was thus removable, notwithstanding plaintiff's post-removal assertion that it never intended to press such a claim. Again, this case is inapposite, standing only for the proposition that the complaint's clear reliance upon federal law at the time of removal cannot be

contradicted by the plaintiff's post-removal representations.

6. The Court also notes, tangentially, that even if the Court were to treat this clarification by the plaintiffs as the equivalent of a post-removal amendment, remand would not be improper. As noted by Judge McKenna in a recent opinion involving the same defendants, where the only federal claim supporting jurisdiction has been

terprets the complaint to assert only a claim for equitable subrogation under New York law.

Defendants assert that a federal common law of subrogation created pursuant ERISA necessarily governs whether or not the Funds have any right of subrogation vis-a-vis their plan participants, and that therefore the Funds' subrogation claims raise several substantial issues of federal common law. In support of this proposition, they most strongly rely upon *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), in which the Supreme Court held that a Pennsylvania law prohibiting subrogation in automobile accident cases was preempted by ERISA § 514 insofar as it applied to an ERISA plan's subrogation provisions. As a result of *FMC*, defendants argue, "it is beyond doubt that state statutory or common law does not govern an ERISA plan's subrogation and reimbursement rights...." Def. Opp.Mem. at 8.

Defendants may very well be correct in this assertion, but even assuming that federal common law dictates the subrogation rights of ERISA plans, that fact alone does not mean the plaintiffs' state law claims "arise under" federal law for jurisdictional purposes. Couch it as they will in "arising under" language, the defendants fail to explain why their assertion that federal common law governs ERISA subrogation is not simply a preemption defense which, while it may very well be a winning argument on a motion to dismiss in the state court, will not support removal jurisdiction to this Court. *See Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 171 (3d Cir.1997) ("ERISA preemption under § 514(a), standing alone, does not ... create federal removal jurisdiction over a claim pled under state law in state court").

The well-pleaded complaint rule, as always, is the basic limiting principle of federal question jurisdiction. Under this rule, the Court must look to see whether "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Board*, 463 U.S. at 10–11, 103 S.Ct. at 2847 (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70). If state law creates the plaintiff's cause of action, then state law determines the elements of that cause of action, and the Court is not free to recharacterize the plaintiff's state law claim as a federal one except in those instances where "complete preemption" applies, as will be discussed below. Absent complete preemption, however, the Court must look to see whether "a well pleaded complaint establishe[s] that its right to relief *under state law* requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Board*, 463 U.S. at 13, 103 S.Ct. at 2848 (emphasis added). If the plaintiff pleads that an element of his or her cause of action' *as defined by state law* requires resolution of a substantial federal question, then federal jurisdiction is supported; if not, any assertion that federal law is controlling is a preemption defense which cannot support jurisdiction.

Several cases are illustrative. In *West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188 (2d Cir.1987) for example, the Second Circuit ruled that where a state-law cause of action for ejectment required as an element the plaintiff's establishment of current right to possession, and that right was conferred by federal law, the federal law formed an ingredient of the well-pleaded complaint and thus would support federal jurisdiction. *See West 14th*, 815 F.2d at 195. Note, however, that the state cause

---

abandoned, the Court retains jurisdiction over the remaining claims but may choose to exercise that jurisdiction at its discretion pursuant to 28 U.S.C. § 1367(c). *See New York v. Philip Morris, Inc.*, No. 97 Civ. 794, 1998 WL 2574, at *1, 1998 U.S. Dist. Lexis 4, at *4–5 (S.D.N.Y.1998). Assuming that the subrogation claim asserted by plaintiffs is not an independent basis for jurisdiction, this Court would, as Judge McKenna did, choose to remand the case to state court as an exercise of discretion, there being no federal

issues left in the case. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Philip Morris*, 1998 WL 2574, at *3–4, 1998 U.S. Dist. Lexis 4 at *11–14. The Court stresses, however, that it holds that no federal question has been pleaded on the face of the Complaint which would provide a basis for jurisdiction. This remand is therefore one under the authority of 28 U.S.C. § 1447(c) and not one under § 1367(c).

of action *itself* required the establishment of the right to possession; i.e., the plaintiffs, in order to win under state law, bore the burden of establishing right to possession, and the plaintiffs relied upon federal law to establish that right. *Derrico*, discussed above, also illustrates this point. In *Derrico*, the state-law breach of contract action itself required plaintiff to prove the existence of a contract, and the plaintiff asserted in its complaint that the contract arose by implication under federal law. *See Derrico*, 844 F.2d at 28; *see also Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201, 41 S.Ct. 243, 245–46, 65 L.Ed. 577 (1921) (where state law gave shareholder cause of action to enjoin corporation from purchasing illegal bonds, plaintiff's allegation that federal bonds were illegal because issued in violation of United States Constitution supported federal question jurisdiction).

In the instant cases, the Funds' complaint, as construed by this Court, alleges a right of subrogation which arises under New York common law, not one which arises under federal law. The Companies nevertheless assert that there are several federal questions that will necessarily be decided in determining this subrogation right, among them (1) whether there is any right of subrogation at all; (2) if so, whether the Funds as subrogees are entitled to compensation for non-medical expenses; and (3) whether the "make-whole" rule—i.e., whether an insurer is only entitled to subrogation after the insured has been made whole—applies to the action. These and many other questions may very well have to be resolved if a court ever reaches the merits of the subrogation claim, but the New York law cause of action for subrogation does not appear to itself require reference to federal law to answer any of these questions—at least, the Companies have averted to no principle of subrogation under New York law which requires reference to federal law.

Again, the Companies may be quite right that New York law rules on these questions are preempted by ERISA, but such a claim is a defense upon which jurisdiction may not rest. Take, for example, the "make-whole" rule. The Funds, in pressing their subrogation claim under New York law, would have to argue that, under New York law, an insurer is entitled to the first dollar of any tort recovery up to and including the amount actually paid out by the insurer. The Companies would counter that, because this is an ERISA plan, ERISA subrogation law preempts the New York law, the "make-whole" rule applies as part of the federal common law under ERISA,[7] and that the subrogation claim must therefore fail. New York subrogation law would not require the Funds to prove that the federal rule was inapplicable; the Companies would bear the burden of the preemption defense. As such, even were it crystal clear that the New York law would be preempted and that the court deciding the subrogation claim would have to advert to federal law, jurisdiction will not lie. The well-pleaded complaint rule was designed precisely with such a situation in mind.

Moreover, this Court would, in order to accept the Companies' argument, have to decide on the merits that the New York subrogation law was preempted in order to determine that any federal questions need be answered. But, as noted earlier, the precise issue at stake in this motion to remand is which court has jurisdiction to decide the preemption question. Fortunately, the principles of federal jurisdiction require this Court only to look at the well-pleaded complaint and determine whether the cause of action relied upon by the plaintiff raises a substantial issue of federal law, unaided by the defendants' probable defenses.[8]

---

7. The Court expresses no opinion as to whether ERISA itself or the federal common law fashioned by courts in deciding ERISA cases actually embrace the "make-whole" rule of subrogation.

8. The Court also notes that the Companies are rather selective in their assertion of which state rules are preempted by ERISA and which are not. The "federal" questions asserted by the

Companies only would arise, by the Companies' own argument, if the provisions of N.Y.C.P.L.R. 4545 apply to bar the Funds from recovering the medical benefits paid to their participants. *See* N.Y.C.P.L.R. 4545(c) (In personal injury cases seeking recovery of medical costs, the court "shall reduce the amount of the award" by any amount "reasonabl[y] certain[ ]" to be replaced "from any collateral source such as ... employee

Finally, the Companies' reliance upon *Bollman Hat Co. v. Root*, 112 F.3d 113 (3d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 373, 139 L.Ed.2d 290 (1997), *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir.1990), and *Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028 (3d Cir.1988), is also misplaced. The Companies assert that these cases stand for the unassailable proposition that "federal question jurisdiction will support claims arising under federal common law." *Bollman*, 112 F.3d at 115. The problem for the Companies, however, is that the Funds have not asserted a claim under federal common law, only one under New York common law.

In each of the three cases cited by the Companies, it was the *plaintiffs* which had sought to invoke the jurisdiction of the federal courts. *See Bollman*, 112 F.3d at 115; *Waller*, 906 F.2d at 987; *Airco*, 850 F.2d at 1031. The courts in two of those cases found that the particular federal jurisdictional bases asserted by the plaintiffs were inapplicable or questionable, but that jurisdiction could be sustained on a federal common law instead. *See Bollman*, 112 F.3d at 115 (whether suit by employer/sponsor of benefit plan for reimbursement from participant was within ERISA jurisdiction was questionable, but suit could be read to allege federal common-law claim which would support federal question jurisdiction); *Provident*, 906 F.2d at 987–91 (plan administrator had no standing to bring suit under ERISA, but reimbursement suit could state claim under federal common law to support jurisdiction). In *Airco*, the plaintiffs had in fact directly stated a federal common-law cause of action in its amended complaint. *See Airco*, 850 F.2d at 1031. Thus, the courts in those cases were not attempting to force a federal cause of action upon a plaintiff who wished to forego it; the plaintiffs in those cases wished to be

in federal court but had erred by not pleading a federal common law action directly, and expressed no objection to the courts' recharacterization of their claims. In fact, the *Provident* court specifically stated that what it was doing was "excus[ing] pleading defects if the facts alleged in the complaint and the relief requested demonstrate the existence of a substantial federal question." *Provident*, 906 F.2d at 988.

The instant cases arise in the very different context of removal, however, so what the Companies wish this Court to do is to force upon the Funds a federal common-law cause of action, despite the absence of such an action on the face of the complaint and the Funds' express disclaimer of such a right, merely because the facts alleged in the complaint *could* potentially support a federal claim. The Companies assert that the removal context makes no difference, because "removal is proper if the district court would have had original jurisdiction over the suit." Def.Mem.Opp. at 10. True as this statement may be, it does not mean that removal is proper any time the plaintiffs could have raised a federal claim but chose not to. It is well-settled that the plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429; *see also Greenshields*, 248 F.2d at 65 ("Removability is dependent upon the course of pleading actually used by the pleader and not by what he could have asserted had he so chosen").[9]

There is, however, one way in which the state law subrogation cause of action pled by the Funds does appear, as a matter of state law, to reference federal law. The Companies have never actually pressed the following argument to this Court. In fact, the Court gave the Companies an opportunity at oral argument to explore this issue, but counsel for the Companies failed to take up the invitation, instead continuing to press its pre-

---

benefit programs...."). Given this statute's express reference to employee benefit plans, this statute seems at least as ripe a candidate for ERISA preemption as the New York common law of equitable subrogation. *See, e.g., Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–99, 103 S.Ct. 2890, 2899–901, 77 L.Ed.2d 490 (1983).

9. To the extent that what the Companies claim is that it is the *combination* of the alleged preemption of the New York subrogation cause of action and the existence of a purported federal common-law right of subrogation under ERISA that creates jurisdiction, this is of course the doctrine of "complete preemption," which will be discussed *infra*.

emption argument.[10] Nevertheless, in the interest of completeness, the Court will address it.

■ Under New York law, equitable subrogation is "the principle by which an insurer, having paid losses of its insured, is placed in the position of its insured so that it may recover from the third party legally responsible for the loss." *Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d 577, 580, 626 N.Y.S.2d 994, 996, 650 N.E.2d 841 (1995). Without passing on the merits of whether the Funds have successfully stated a subrogation claim, the Court notes that it appears two elements are necessary to establish a right of subrogation under New York law. First, the purported subrogee must have actually made payment to the subrogor for the subrogor's loss. *See Teichman v. Community Hosp. of Western Suffolk*, 87 N.Y.2d 514, 521, 640 N.Y.S.2d 472, 475, 663 N.E.2d 628 (1996) ("[The insurer] was . . . entitled to subrogation by operation of law once it made payment on behalf of its insured."); *Winkelmann*, 85 N.Y.2d at 582, 626 N.Y.S.2d at 997, 650 N.E.2d 841 ("An insurer's subrogation rights accrue upon payment of the loss. At that point, an insurer who has paid the policy limits possesses the derivative and limited rights of the insured and may proceed directly against the negligent third party to recoup the amount paid."); *Federal Ins. Co. v. Arthur Andersen & Co.*, 75 N.Y.2d 366, 372, 553 N.Y.S.2d 291, 293, 552 N.E.2d 870 ("These rights [of subrogation] accrue upon payment of the loss . . . ."). In this element, no federal question arises.

However, it appears the second element the plaintiff must prove is that any payment to the subrogor was not made voluntarily but rather pursuant to some obligation running from the subrogee to the subrogor. *See Reliance Ins. Co. v. Aerodyne Engineers Inc.*, 204 A.D.2d 944, 612 N.Y.S.2d 87, 88 (3d Dep't 1994) ("We agree with defendant's contention that plaintiff had no contractual obli-

gation to [the insured] and thus no subrogation rights."); *Fidelity & Casualty Co. of New York v. Finch*, 3 A.D.2d 141, 143–44, 159 N.Y.S.2d 391, 394 (3d Dep't 1957) ("[R]espondent may recover only the amount which it was reasonably required to pay under the terms of its surety bonds. As to anything beyond this obligation it would be merely a volunteer and not entitled to subrogation."); *cf. Federal Ins.*, 75 N.Y.2d at 372, 553 N.Y.S.2d at 293, 552 N.E.2d 870 (equitable subrogation rights "are based upon the principle that in equity an insurer, *which has been compelled under its policy to pay a loss*, ought in fairness to be reimbursed by the party which caused the loss.") (emphasis added). Because the Funds plead in their complaint that their obligation to pay their participants' medical bills is "pursuant to the terms of the Funds' plan documents" and that they will "continue to be obligated under their plan documents to pay medical and health benefits," Complaint ¶¶ 506–07, this would appear to be an assertion in the well-pleaded complaint that their obligation to pay—an element of their state law claim—is a question of federal law—i.e., the obligations of an ERISA plan under federal law to fulfill the terms of the plan documents—thus potentially serving as a basis for federal question jurisdiction under the principles of *West 14th* and the other cases mentioned above. This will not, however, support jurisdiction in this case, because under *West 14th* and the other cases discussed, a substantial federal question is not included here.

A state law cause of action will not support federal question jurisdiction solely because of the presence of a federal issue. *See Merrell Dow*, 478 U.S. at 813, 106 S.Ct. at 3234 ("[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"); Rather, the task before this Court is to "look to the nature of the federal question raised in the claim to see if it is sufficiently substantial

---

**10.** The Court: What defenses would you have to a subrogation claim, meaning, if the plan has paid the benefits, would you be able to attack their payment as unnecessary under the plan?
  Mr. Hein [counsel for defendants]: I think we would have a whole litany of defenses here,

but for purposes of today's issue—which is a jurisdictional issue—I think the critical point is that the right of subrogation, if it exists at all, existed under the federal common law of ERISA.
Tr. Oral Arg. at 24.

to warrant federal jurisdiction." *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 570 (2d Cir.1995). The nature of this inquiry is one that is governed more by pragmatic judgments than application of bright line rules; it is "'a selective process which picks the substantial causes out of the web and lays the other ones aside.'" *Merrell Dow*, 478 U.S. at 813–14, 106 S.Ct. at 3235 (quoting *Franchise Tax Bd.*, 463 U.S. at 20–21, 103 S.Ct. at 2851–52); *see Greenblatt*, 68 F.3d at 570 ("[N]o bright-line test governs our inquiry").

*Merrell Dow* provides one test for whether a federal issue is "sufficiently substantial" to warrant federal jurisdiction. In *Merrell Dow*, the plaintiffs had asserted a state law negligence cause of action which included, as an element, a purported rebuttable presumption of negligence created by the defendants' alleged "misbranding" of drugs in violation of the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 et seq. *See Merrell Dow*, 478 U.S. at 805, 106 S.Ct. at 3230–31. It was uncontested by the parties, and assumed by the Court, that neither the FDCA itself nor any other federal law provided a cause of action for misbranding. *See id.* at 810–11, 106 S.Ct. at 3233. The Court denied federal question jurisdiction on the ground that if the federal standard invoked is one for which Congress has decided that no federal cause of action should exist, this determination "is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 814, 106 S.Ct. at 3235.

The instant cases present themselves in a somewhat different posture than *Merrell Dow*, in that the incorporated federal question—i.e., whether the Funds were obligated to pay the medical bills of their participants—is one which would normally not be pressed by the plaintiffs but rather by the participants, who are not parties to these suits. That is, the plaintiffs in *Merrell Dow* were claiming injury from the defendants' alleged violation of federal law, while the plaintiff Funds must seek to establish exactly

the opposite—i.e., that in fact they were complying with federal law by making benefit payments. Regardless, the basic question—what is the obligation of an ERISA plan vis-a-vis its participants?—is one which the federal courts can be called upon to adjudicate—namely, via a suit brought by a participant against a plan to enforce and/or clarify his or her rights under the plan. *See* ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Having provided for such suits, it cannot be said that Congress has made a determination that the question is not "substantial," and thus the *Merrell Dow* test does not by itself bar federal jurisdiction here.

However, as demonstrated by *Greenblatt*, while the *Merrell Dow* test works to exclude jurisdiction over federal issues for which Congress has determined there should be no federal cause of action, the converse proposition does not follow—that is, the fact that the incorporated federal question is one for which Congress *has* provided a private remedy does not mean that its presence in a state cause of action automatically results in federal-question jurisdiction. In *Greenblatt*, trustees of a union ERISA benefit plan brought suit against both an employer who had defaulted on its obligations under the collective bargaining agreement to make payments to the plan and against a surety who had furnished a surety bond guaranteeing the defaulting employer's obligations. When the defaulting employer went bankrupt, the only remaining claims were against the surety to enforce the bond. *See Greenblatt*, 68 F.3d at 567.

The *Greenblatt* court noted that, as an element of its state law claim to enforce the bond, the plaintiffs would have to prove that the employer (the principal on the bond) had defaulted on its obligations under the CBA. *See id.* at 570. Despite the acknowledged fact that the CBA was "'a federal contract and is therefore governed and enforceable by federal law,'" *id.* (quoting *International Ass'n of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 692, 83 S.Ct. 956, 962, 10 L.Ed.2d 67 (1963)), the court found this fact alone insufficient to confer jurisdiction because "the agreement itself is not federal law. Thus, the fact that an element of the

cause of action requires construction of the agreement does not present a federal question." *Greenblatt,* 68 F.3d at 570–71. Similarly, although federal law would provide a cause of action to the plaintiffs against the employer for violating the CBA (under the LMRA, 29 U.S.C. § 185(a)) or for failing to meet his ERISA obligations (under 29 U.S.C. § 1132(a)), the court considered this fact "of no moment" because these provisions were "not the source of the rights or duties sought to be enforced" in that suit. *Id.* at 571.[11]

The instant cases are remarkably similar to *Greenblatt.* As noted, the right of subrogation sought to be established by the Funds is created by New York law, as was the right to recover on the surety bond in *Greenblatt.* Like the bond claim, which as one element required interpretation of a CBA under federal law, the Funds' subrogation claim has an element requiring the interpretation of the ERISA plan, which is also governed by federal law. However, like a CBA, an ERISA plan "itself is not federal law," and thus construction of the ERISA plan to determine the Funds' obligations, being merely an element of the state law claim and not providing the cause of action itself, is no more substantial a federal question than that presented in *Greenblatt. See id.*

If anything, in fact, the subrogation claims made by the Funds are even more insubstantial than those in *Greenblatt.* Subrogation is itself not a cause of action in the usual sense; it is wholly derivative, dependent upon there being a cause of action available to the subrogor. Any flaw which would doom the subrogors' suits against the Companies (including any valid defenses the Companies would have against such suits) also negates the Funds' cause of action. Subrogation is thus in merely a procedural device whereby one party is substituted for another.

Therefore, in these cases, we have a potential federal issue that is in effect "twice removed" from the primary cause of action. That is, the primary cause of action is the cause of action which participants would have against the Companies; there is no question that the causes of action asserted are all state tort law and would in no way give rise to federal question jurisdiction if brought by the participants. The Funds assert a right to step into the participants' shoes via a right of subrogation which is also not a creature of federal law. Federal law only potentially comes into this suit because one element of the state-law subrogation right requires construction of the Funds' plan provisions, which are themselves not federal law but whose interpretation is governed by federal law. With an eye toward "pick[ing] the substantial causes out of the web and lay[ing] the other ones aside," *Merrell Dow,* 478 U.S. at 813–14, 106 S.Ct. at 3235, this Court believes that, as in *Greenblatt,* this is simply "too thin a reed to support federal jurisdiction." *Greenblatt,* 68 F.3d at 571.

### III. *Complete Preemption under ERISA*

As noted above, removal jurisdiction may be proper in this case under the doctrine of "complete preemption"—i.e., if the cause of action asserted by the plaintiffs is not only preempted by ERISA but is in effect transformed by that preemption into a federal cause of action. In order for complete preemption under ERISA to apply, two conditions must obtain: "(1) the cause of action is based on a state law that is preempted by ERISA, and (2) the cause of action is 'within the scope of the civil enforcement provisions' of ERISA § 502(a), 29 U.S.C. § 1132(a)." *Romney v. Lin,* 94 F.3d 74, 78 (2d Cir.1996) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66, 107 S.Ct. 1542, 1548, 95

11. The *Greenblatt* court also relied on the fact that, as litigated in the district court, the employer's obligations under the CBA and ERISA had never actually been in dispute. *See Greenblatt,* 68 F.3d at 571. This Court of course lacks the benefit of hindsight available to the appeals court, and is not in a position at this stage of the litigation to determine whether the extent of the Funds' obligations to pay its participants' medical bills will be a point of controversy in the suit. Although the somewhat tangential nature of the

issue and the complete failure of either party to address it in the course of this motion suggest that there will be no substantial dispute on this point, the Court believes that it must proceed on the assumption that the question is as likely to be a point of controversy in the suit as the more "substantive" underlying tort claims. This is also consonant with the principle that jurisdiction must be determined solely from the face of the plaintiff's complaint, unaided by other pleadings or evidence.

L.Ed.2d 55), *cert. denied,* —— U.S. ——, 118 S.Ct. 263, 139 L.Ed.2d 189 (1997) ("Romney I"). As discussed, the very question in this case is which court will decide the preemption question, so it is obviously preferable that this Court not render the question moot by ruling on the first prong of the complete preemption test if it can be avoided. Therefore, the Court will address the second prong of the above test first; if it is not met, the Court need not reach the issue of whether any state law subrogation cause of action is preempted by ERISA. *See Toumajian v. Frailey,* 135 F.3d 648, 655 (9th Cir.1998).

The civil enforcement provisions of ERISA § 502 grant standing for various entities to sue for specific types of relief. The only provision which arguably applies to the instant suit is § 502(a)(3):

(a) A civil action may be brought—

. . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

Although the exact limits of the phrase "within the scope of" § 502 are not defined, the Second Circuit, along with other courts, has looked to see (1) whether the suit at issue is brought by a party to whom ERISA grants standing and (2) whether the rights sought to be enforced by the suit are of the kind protected by § 502. *See, e.g., Plumbing Industry Board v. E.W. Howell Co.,* 126 F.3d 61, 69–70 (2d Cir.1997) ("[A] state cause of action that acts as an alternative means of vindicating the rights protected by § 502(a) is 'within the scope' of the section. . . ."); *Romney v. Lin,* 105 F.3d 806, 813 (2d Cir.) ("[A] suit that alleges an ERISA violation can be within the scope of ERISA. . . ."), *cert. denied,* —— U.S. ——, 118 S.Ct. 263, 139 L.Ed.2d 189 (1997) ("Romney II"); *id.* ("ERISA explicitly provides a cause of action for [the plaintiff]"); *Romney I,* 94 F.3d at 81 (suit by a plan fiduciary to enforce employer obligations is within the scope of § 502 because "ERISA § 502(a) already provides a cause of action to enforce employer contributions to ERISA plans"); *Lupo v. Human Affairs Int'l,* 28 F.3d 269, 272 (2d Cir.1994) (suit by plan participant "may be deemed to state a federal claim warranting removal only if one or more of his claims is properly characterized as seeking 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.' ") (quoting ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)); *id.* (no removal jurisdiction where "none of [the plaintiff's] claims bears any significant resemblance to those described in § 1132(a)(1)(B)"); *cf. Albradco, Inc. v. Bevona,* 982 F.2d 82, 85–86 (2d Cir. 1992) (in declaratory judgment action filed by shareholders of employer against plan beneficiaries, removal of beneficiaries' state court action would have been proper because beneficiaries "would be qualified plaintiffs under § 502(a)"); *see also Toumajian,* 135 F.3d at 656 (ERISA § 502 "limits the causes of action that are available under the statute, as well as by whom and against whom they may be brought"); *id.* at 655–57 (analyzing whether plaintiff was one of the named classes of plaintiff in § 502 and whether he sought relief available under § 502); *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1487 (7th Cir.1996) (expounding three-factor test for "within the scope": "(1) whether the plaintiff is eligible to bring a claim under that section, (2) whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a), and (3) whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law."), *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 355–61 (3d Cir.1995) (analyzing whether claims, properly construed, are described in § 502).

The Funds' subrogation claim does not fall within the scope of § 502. To begin with, each of the suits is brought by the benefit fund itself, not by a "participant, beneficiary, or fiduciary"—the only plaintiffs granted

standing in § 502.[12] The Second Circuit has taken a very strict view of who has standing to bring suits under § 502, refusing to extend standing beyond the plaintiffs specifically named in ERISA. *See Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 891–93 (2d Cir.1983). In *Pressroom*, the Second Circuit specifically rejected the argument that a fund had either standing under ERISA or that the district courts had jurisdiction over ERISA claims brought by a fund. The *Pressroom* court declined to accept the notion that "the carefully drafted provisions extending federal jurisdiction and standing to pension plan participants, beneficiaries, and fiduciaries were incomplete, and that those sections do not foreclose the possibility of actions brought by other parties." *Id.* at 893; *see also Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14 (2d Cir.1991) ("In the absence of some indication of legislative intent to grant additional parties standing to sue, the fist in § 502 should be viewed as exclusive") (former fiduciary has no standing); *Tuvia Convalescent Center v. National Union of Hosp. & Health Care Employees*, 717 F.2d 726, 730 (2d Cir.1983) (employer not among enumerated plaintiffs; no standing to bring ERISA suit).

The Companies argue that the Court should look beyond the nominal plaintiffs to determine that in reality this is a suit by the plan trustees in their capacity as fiduciaries. However, the Companies cite no authority for this proposition,[13] nor could it be squared with this Circuit's interpretation of the standing provisions of § 502. *Pressroom*'s restrictive reading of the standing provisions of § 502 would be rendered meaningless if courts could simply transform the named plaintiff to create standing. Nor is this a case where a party normally lacking standing under ERISA—e.g., an employer—is actually acting in a fiduciary capacity so as to achieve standing. *See, e.g., United States Steel Corp. v. Commonwealth Penn. Human Relations Comm'n*, 669 F.2d 124, 128–29 (3d Cir.1982); *see also Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir.1996); *Pressroom*, 700 F.2d at 892 n. 6. As the *Pressroom* court noted, the definition of "fiduciary" in ERISA would seem to exclude the possibility of a plan acting as a fiduciary. *See* 29 U.S.C. § 1002(21)(A) ("a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan...."); *Pressroom*, 700 F.2d at 893 n. 8 ("we find it difficult to imagine a situation in which a fund could fulfill one of these roles [participant, beneficiary, or fiduciary].").

The Companies attempt to distinguish the clear mandate of *Pressroom* by noting that *Pressroom* did not involve a "plaintiff attempting to *escape* ERISA's grant of federal jurisdiction by artful pleading," Def.Mem. in Opp. at 19, the argument apparently being that whether the plaintiff is viewed as a plan or a fiduciary is determined by which view best thwarts the plaintiff's choice of forum. This of course has a basic principle of federal jurisdiction precisely backwards—namely, that the plaintiff is master of his complaint and can presumptively choose his forum. In any case, whether a plaintiff has standing under ERISA is a matter of interpreting the statute, and there is certainly no indication in ERISA that its standing provisions are to be interpreted differently depending upon whether the plaintiff files in federal court or

---

**12.** The Secretary of Labor and the states are also authorized to bring suits in certain instances inapplicable here.

**13.** In *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), the Supreme Court held that state regulation of an ERISA plan through workmen's compensation law was still preempted notwithstanding the fact that such regulation was indirect, rather than a direct pension regulation. *See id.* at 525, 101 S.Ct. at 1907. The quote cited by the Companies—"ERISA's authors clearly meant to pre-

clude the States from avoiding through form the substance of the preemption provision"—was an interpretation of ERISA's definition of "State": "a State, any political subdivision thereof, or any agency or instrumentality of either, which purports to regulate, *directly or indirectly*, the terms and conditions of employee benefit plans covered by this subchapter." *See id.* (quoting ERISA § 514(c)(2), 29 U.S.C. § 1144(c)(2)). The broad definition of regulation in this particular provision of ERISA is hardly a mandate to interpret ERISA loosely as a general proposition.

the defendant attempts to remove there. Either the cause of action falls within the scope of § 502, or it does not; a suit by a plaintiff who lacks standing clearly does not.

The Court does not disagree with the Companies that the Funds, in order to avoid federal jurisdiction, have taken advantage of a provision of ERISA that is perhaps more form than substance. However, this Court is not free to ignore either the language of ERISA's standing provisions or the Second Circuit's interpretation of that language. Moreover, the price the Funds pay to avoid a federal forum is, of course, reliance upon state law and the not inconsiderable risk here that their state law subrogation claim will be swept away by ERISA's broad preemptive power. What they gain is the right to have this preemption issue decided in state court, subject of course to the possibility (however remote) of federal review by the Supreme Court. The mere fact, however, that the ERISA preemption issue will be decided in the first instance in state court is neither new nor, at least in the eyes of the courts, an impermissible construction of ERISA. See Romney II, 105 F.3d at 813 ("There are thus some cases in which a state law cause of action is preempted, but only a state court has jurisdiction to so rule.").

The Court thus refuses to recharacterize the plaintiffs in these suits as fiduciaries. Therefore, because the Funds have no standing to bring these suits under ERISA § 502, they cannot be said to fall within the scope of § 502. Accord C.C. Mid West, Inc. v. McDougall, 990 F.Supp. 914, 921 (E.D.Mich. 1998) ("[B]oth common sense and case law indicates that if Plaintiff is not a party authorized to file a civil enforcement action, its claim does not "arise under" § 1132").

Even if, however, the Court were to accept that these suits are actually brought by the fiduciaries, the suits still fail to fall within the scope of § 502 because they do not assert claims for relief that are cognizable under § 502. The Funds do not claim that their subrogation rights are grounded in the plans themselves, so it is clear that these are in no way suits "to enforce . . . the terms of the plan." ERISA § 502(a)(3)(B)(ii), 29 U.S.C. § 1132(a)(3)(B)(ii). The only possible characterization of this suit that falls within § 502, then, is characterizing the suit as one "to enforce [a] provision[ ] of this subchapter," id.—namely, enforcing an equitable subrogation right found in the federal common law created under ERISA.[14]

Whether such a right actually exists—or could be created—is questionable. See, e.g., Member Services Life Ins. Co. v. American Nat'l Bank and Trust Co., 130 F.3d 950, 958 (10th Cir.1997) (refusing to create equitable subrogation right because "ERISA embodies no policy on the matter" and "recourse to federal common law is improper when it would be used to rewrite ERISA rather than to implement its policies"), cert. denied, —— U.S. ——, 118 S.Ct. 1843, 140 L.Ed.2d 1093 (1998); cf. Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 281 (2d Cir.1992) ("Broadening rights in a statute under the guise of federal common law should only be undertaken with great caution and where it 'will vindicate an important statutory policy.'") (quoting Cummings by Techmeier v. Briggs & Stratton Retirement Plan, 797 F.2d 383, 390 (7th Cir.1986)); but see, e.g. Heller v. Fortis Benefits Ins. Co., 142 F.3d 487, 495, 1998 U.S.App.Lexis 8347, at * 19–20 (D.C.Cir.1998) (creating equitable right of restitution under federal common law in favor of plan to recover benefits wrongly paid to participant); Waller, 906 F.2d at 993–94

---

**14.** Some commentators have suggested that the Second Circuit in *Lupo v. Human Affairs Int'l*, 28 F.3d 269 (2d Cir.1994), limited the complete preemption doctrine only to those causes of action which can be said to fall within the scope of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). *See Lupo*, 28 F.3d at 272–73 (rejecting removal based on a fiduciary duty claim, apparently falling within the scope of § 502(a)(2), because such claims "are not the § 1132(a)(1)(B) claims that provide the complete preemption necessary to satisfy the well-pleaded complaint rule in accor-

dance with *Metropolitan Life* "); Karen A. Jordan, *The Complete Preemption Dilemma*, 31 Wake Forest L.Rev. 927, 967 n. 262 (1996); Paul A. Ondrasik Jr. & Sara E. Hauptfuehrer, *Removal Jurisdiction in ERISA Cases*, 4 No. 5 ERISA Litig Rep. 4 (1995). Whether this is an accurate characterization of *Lupo* or not, subsequent cases in this circuit have not limited complete preemption to § 502(a)(1)(B). *See Romney II*, 105 F.3d at 813 (allowing complete preemption of claim within scope of § 502(a)(3)).

(creating equitable right of restitution in favor of plan to recover benefits paid to participant who has recovered from tortfeasor). However, the Court agrees with the Companies that this right need not actually exist in order for the claim to fall within the scope of § 502. As pointed out in *Romney II*, the "scope" of ERISA encompasses more than just those suits "that are so completely within the four corners of ERISA as to be winning ERISA claims." *Romney II*, 105 F.3d at 813.

In *Romney*, the Second Circuit held that a suit to recover plan contributions against the principal shareholder of a corporate employer was within the scope of § 502 regardless of the fact that shareholders are not made liable under ERISA for such contributions—i.e., a suit could be within the scope of § 502 yet still be dismissed for failure to state a claim. *See id.* The *Romney* court found it important that a "suit to collect ERISA contributions is very much of central concern to the federal statute" and that "ERISA provides ... a cause of action for [the plaintiff], at least vis-a-vis the employer." *Id.* The import of *Romney*, it seems, is that ERISA was intended to regulate the plan/employer relationship, at least as far as contributions are concerned, and that § 502 was intended to provide a cause of action to adjudicate that relationship—which includes, of course, the possibility of finding that certain parties are outside that relationship just as much as finding other parties are within.

The question, then, would seem to be whether the subrogation suits brought by the Funds adjudicate the rights and relationship of parties which ERISA was intended to regulate. As will be discussed, the Court believes that the gravamen of the Funds'

suits does not involve a relationship central to ERISA.

The Companies have directed this Court to only two cases—and those in a letter brief filed after oral argument—in which a plan fiduciary's (or a plan's) suit as subrogee against a third party was held to be within the scope of § 502, both of them removal jurisdiction cases like those before the Court currently.[15] *See West Virginia–Ohio Valley Area I.B.E.W. Welfare Fund v. American Tobacco Co.*, No. 2:97–0978 (S.D.W.Va. Mar. 19, 1998) (unpublished slip opinion); *Central Ill. Carpenters Health & Welfare Trust Fund v. Philip Morris, Inc.*, No. 97–CIV–568–WDS (S.D.Ill. Mar. 16, 1998) (unpublished slip opinion). The Court respectfully declines to follow these decisions.

Preliminarily, the Court notes that in *Central Illinois*, the court accepted that a plan could bring suit in its own name under ERISA, relying on the "sue or be sued" language of § 502(d)(1). *See Central Ill.*, slip op. at 18. The *IBEW* court, meanwhile, did not even directly address the question but appeared to simply assume that a plan could bring suit under § 502. *See IBEW*, slip op. at 6–7. Assuming that both cases correctly state (or assume) the law of their respective circuits, the proposition that plans have § 502 standing has been squarely rejected in this Circuit by *Pressroom*, as noted above, and on that ground alone this Court would have to part ways with both cases.

As to whether these suits are the types of claims cognizable under § 502, the Court must simply disagree with these two courts' analyses. *Central Illinois* appears to rely heavily on two factors: (1) that the plans are only juridical entities capable of bringing suit by virtue of ERISA, and (2) that plaintiffs had alleged (as to the plaintiffs in the instant

---

**15.** The Companies did submit a third case, *Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, et al.*, No. 97–11552–GAO (D.Mass. June 19, 1998) (slip op.), in a letter brief on June 23. Although the Court would not normally consider so late a submission, the Court briefly addresses this case. In *Massachusetts Laborers*, an ERISA benefit plan sued "by and through its trustees" for restitution from the defendants, a claim the court construed as one of subrogation and allowed removal. That case is distinguishable from the situation here, however. To begin

with, that court held that the suit was actually brought by the fiduciaries, based on the "by and through" language in the complaint, so the problem with lack of standing was overcome (unlike in this case, where no such "by and through" language is included). Second, for the reasons to be more fully discussed below, this Court disagrees with the *Massachusetts Laborers* court's reasoning that a subrogation suit against a third party tortfeasor is a suit "to enforce the terms of the plan."

cases) that ERISA obligates them as fiduciaries to maintain these suits. *See Central Ill.,* at 19.[16] This analysis appears to this Court to be question-begging: the fact that without ERISA, benefit plans would have no capacity to sue (itself an uncontroversial proposition, *see Pressroom,* 700 F.2d at 893), says nothing about whether ERISA in fact creates *any* cause of action enforceable by those plans, much less whether subrogated causes of action against third parties are cognizable under ERISA. Under this logic, any suit by a benefit plan—regardless of whether the subject matter of the suit is related to ERISA in any way—must necessarily fall within the scope of § 502, a result this Court finds unwarranted. As for the allegation of fiduciary obligation, the Court notes simply that (1) as noted earlier, plans are not fiduciaries and thus cannot have a "fiduciary obligation to bring suit," regardless of the plaintiffs' allegations, and (2) the plaintiffs' motive in bringing suit is completely irrelevant to the characterization of their cause of action, as the success of the plaintiffs' claims would in no way turn on their having been "obligated" to bring them.

Turning to *IBEW,* that court relied heavily (as do the defendants) upon the persuasive authority of cases which found that a claim brought by a plan (or a plan fiduciary) against a participant for reimbursement was removable as within the scope of § 502. *See IBEW,* slip op., at 6. As will be discussed at length below, this Court believes that relying upon these cases misses a crucial distinction which makes these cases inapposite. The *IBEW* court also relied upon "the macroeconomic impact of this type of litigation on plans generally and the negative implications of inconsistent adjudications that might result from disparate state regulation." *Id.* at 7. While the sort of inconsistent regulation which the *IBEW* court feared is certainly a concern, that is an argument for ERISA preemption of state subrogation law, not for

the antecedent question of jurisdiction—i.e., which court will decide the preemption question. This Court is unpersuaded that the jurisdictional question presents any special need for uniformity.

To begin with, the possibility of inconsistent adjudications of the preemption question is not diminished by finding federal jurisdiction over that question; if anything, such a finding only expands the number of courts which can potentially pass on the preemption issue. What has to be argued for is not the presence of federal-question jurisdiction but rather the absence of state court jurisdiction. *See Merrell Dow,* 478 U.S. at 815–16, 106 S.Ct. at 3236. Further, of course, even if it were held that federal courts not only had jurisdiction to determine the preemption issue, but that such jurisdiction was exclusive, the various federal circuits are by no means immune from differing opinions. This problem of non-uniformity is greatly mitigated, however, by the fact that any differences are ultimately subject to resolution by the Supreme Court—precisely as they are if state courts differ on this federal question. *See id.* at 816, 106 S.Ct. at 3236. This last fact is what makes the jurisdictional question much less urgent than the preemption question— because if there is no preemption of state law subrogation actions, then the plans would be subject to fifty-plus regulatory schemes unreviewable by the Supreme Court. Finally, any benefit that might be gained by exclusive federal jurisdiction over subrogation claims by benefit plans would be negated by the fact that these issues can also be raised in suits by participants against plans under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and that state courts are expressly given concurrent jurisdiction over such suits. *See* 29 U.S.C. § 1132(e)(1).

The Companies' other cases also fail to persuade this Court that the instant suits fall within the scope of § 502. *A. Copeland En-*

---

**16.** The court there states,

> Clearly, plaintiffs can maintain this cause of action on their own behalf and in their own names under ERISA. Even plaintiffs, in their complaint, contemplate this fact as evidenced by the allegations [that they have authority to bring suit in their own names under ERISA] contained therein. As discussed by defen-

dants, plaintiffs even go so far as to allege that ERISA obligates them as fiduciaries to maintain this action against these defendants. Thus, absent ERISA, this cause of action would neither be required nor would it even be possible.

*Central Ill.,* at 19.

*terprises, Inc. v. Slidell Mem'l Hosp.*, 657 So.2d 1292 (La.1995), did not reach this question. In *Copeland*, an ERISA plan fiduciary filed a malpractice claim against the medical providers for one of its plan participants, seeking recoupment of medical expenses paid. The plan's fiduciary claimed that, under the terms of the plan, it was subrogated to the claims of its participants to the extent it had paid out medical benefits.[17] *See id.* at 1300. The court never determined that in fact such a claim could be made under ERISA because even assuming that it could, such a claim was not within the concurrent jurisdiction granted to state courts under ERISA § 502(e). *See id.* at 1302 ("the federal district court would have exclusive subject matter to determine whether Copeland is entitled to reimbursement pursuant to a subrogation agreement"); ERISA § 502(e), 29 U.S.C. § 1132(e) (granting exclusive jurisdiction to federal courts for all § 502 suits except for those under § 502(a)(1)(B) and (a)(7)).

Defendants do point to reimbursement cases in which the fiduciary of a plan was entitled to sue under § 502 to enforce subrogation rights, conferred by the terms of the plan, against plan participants—i.e., the purported subrogors. *See, e.g., Southern Council of Industrial Workers Trust Fund v. Ford*, 83 F.3d 966, 969 (8th Cir.1996); *Bertini v. Hineck*, No. 97 Civ. 0038, 1997 U.S. Dist. Lexis 14333, 1997 WL 590811 (S.D.N.Y. Sept. 23, 1997). However, such cases fall squarely within the language of § 502(a)(3)(B)(ii): "A civil action may be brought by a ... fiduciary to obtain other appropriate equitable relief to enforce any provisions of this subchapter or the terms of the plan." In the instant cases, of course, the suits are not brought against participants to enforce the Funds' subrogation rights, but rather are cases brought by Funds as subrogees against the Companies for torts unrelated to any ERISA provisions.

The Companies argue that this distinction—between a reimbursement suit by an ERISA plan to recover from a participant and a suit by a plan, as subrogee to a participant's claims, directly against the third party tortfeasor—as merely one of "sequencing," without substantive implications for this Court's jurisdiction. The distinction is much more fundamental than merely one of sequence, however.

This Court agrees with the assessment of the Ninth Circuit that the key to understanding the preemptive force of ERISA is recognizing that ERISA "comprehensively regulates certain relationships: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee." *General Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993). Although it is not ERISA's preemptive breadth that the Court is deciding, the Court believes that the same relationships are at the heart of the civil enforcement scheme of § 502—that is, § 502 is meant to provide a judicial vehicle for adjudicating disputes surrounding those relationships that are of concern to ERISA.

As correctly noted by the Companies, the Funds' purported subrogation claim against the Companies comprises two substantive parts: (1) the rights of the Funds vis-a-vis their participants to be subrogated to the participants' tort claims, and (2) the rights of the participants to recover from the Companies for the alleged torts. It seems clear beyond peradventure that the latter of these issues is of no concern to ERISA whatsoever; that is, a stand-alone tort suit brought by one of the Funds' participants against the Companies would not be within the scope of § 502 merely because the plaintiffs happen to be participants in the ERISA plans, even plans that have subrogation provisions. *See Pfefferle v. Solomon*, 718 F.Supp. 1413, 1417 (E.D.Wis.1989). On the other hand, the adjudication of the rights of the Funds to be subrogated to their participants' tort claims would appear to be very much within the concern of § 502; although, as noted, the

---

**17.** The plan also made state-law subrogation claims which were rejected, on state-law grounds, by the court. *See Copeland*, 657 So.2d at 1297 (rejecting claim of legal subrogation under Louisiana law); *id.* at 1298–99 (rejecting claim of conventional subrogation under Louisiana law).

Funds cannot bring suit in their own name against their participants, fiduciaries of those plans could, and participants could presumably sue the Funds under § 502 for a determination of these subrogation rights.

The difference between suits by an ERISA plan against its participants for reimbursement from tort recoveries and one by the plan as subrogor directly against the third party tortfeasor is that the gravamen of the former is the adjudication of the relationship between plans and participants. By contrast, the heart of the subrogation suits at issue here is the relationship between the participants and the Companies—that is, the torts allegedly committed against the participants; the subrogation issue allows the Funds step into the shoes of participants, but it is still the participants' rights vis-a-vis the Companies that is at stake. Even though a successful suit by the Funds would require a court to determine whether the Funds did have subrogation rights, participants would not be bound by that judgment and could challenge the Funds' subrogation rights in a suit directly against the Funds. *See* Restatement (Second) Judgments, § 37 cmt. e. Thus, the difference between these types of suits is not merely "sequencing," but rather the quite critical distinction of which relationship is being adjudicated. Standing issues aside, the reimbursement suit quite clearly falls within the scope of § 502; the latter—that is, the suits involved here—just as clearly do not.[18]

Thus, even were these suits to be considered ones brought by fiduciaries (thus avoiding the standing problem), the Court does not believe that a subrogation suit brought by a fiduciary against a third-party tortfeasor would be cognizable under § 502. Therefore, these suits not falling within the scope of § 502, the requirements of complete preemption are not satisfied, and this Court

need not, and does not, determine whether the purported equitable subrogation claim under New York law is preempted by ERISA.

In sum, the plaintiff Funds have chosen to rely solely on state law, and to forego federal law, for their subrogation claim. State law, not federal law, creates the cause of action. The well-pleaded state-law subrogation claim requires resolution of a federal issue, but not one that is sufficiently substantial to create federal-question jurisdiction. And though the defendants claim that this state-law claim is preempted by federal law, they have failed to meet the requirements of complete preemption because this subrogation claim does not fall within the civil enforcement provisions of ERISA § 502. Although the arguments on both sides were well-crafted and the question is a close one, the Court concludes that this Court is without subject-matter jurisdiction, and therefore remands these cases to the state courts of New York from whence they were removed.

## IV. *Award of Costs & Fees*

The Funds also request this Court to award costs and fees pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Court denies the Funds' request.

The award of costs and fees under § 1447(c) is a matter committed largely to the discretion of the Court. *See Morgan Guaranty Trust Co. v. Republic of Palau,* 971 F.2d 917, 924 (2d Cir.1992); *Schepis,* 989 F.Supp. at 517–18. The Court need not find that the removal was in bad faith, only that it was improper. *See Morgan,* 971 F.2d at 923–24; *Mints v. Educational Testing Serv.,*

18. The Court expresses no opinion as to whether the jurisdictional analysis would be different if plan participants joined the suits (or were impled) for purposes both of asserting tort claims against the Companies and of challenging the Funds' subrogation rights. The Court only notes that, should such an intervention occur and should this provide a basis for removal, the federal removal statute would appear to allow the Companies to attempt removal anew. *See* 28

U.S.C. § 1446(b) (cases not removable on the basis of the initial pleadings may be removed within 30 days of the receipt by defendant of the pleading or other papers "from which it may first be ascertained that the case is one which is or has become removable"); *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 492–93 (5th Cir.1996); *One Sylvan Rd. North Assocs. v. Lark Int'l. Ltd.,* 889 F.Supp. 60, 62–63 (D.Conn.1995).

99 F.3d 1253, 1260 (3d Cir.1996). However, in exercising its discretion, this Court believes that costs should not be awarded automatically upon a remand, but rather should be based on a consideration of whether the grounds for removal were substantial or presented a close question. *See Schepis,* 989 F.Supp. at 518. Here, the arguments for federal jurisdiction were indeed substantial, although ultimately unpersuasive, and on that basis the Court declines to award costs.

In addition, the Court also notes that a large part of why this case became a close question for removal was the Funds' ambiguity in pleading their subrogation claim. To the extent that plaintiffs' own conduct contributed to the removal, this Court believes that such conduct counsels against awarding costs; in fact, an award of costs and fees under such circumstances has been held by some circuits to be an abuse of discretion. *See, e.g., Avitts v. Amoco Prod. Co.,* 111 F.3d 30, 32–33 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 435, 139 L.Ed.2d 335 (1997). Whether that is the law in this circuit is apparently an open question, but nevertheless the Court considers the Funds' own inartful pleading as counseling against an exercise of the Court's discretion to award costs.

### CONCLUSION

For the foregoing reasons, the Court concludes it has no subject-matter jurisdiction over these cases. Therefore, the Court grants the plaintiffs' motions and directs the Clerk of the Court to remand these cases to the New York State Supreme Court, New York County. The Court denies the plaintiffs' motion for costs and fees associated with the removal.

**SO ORDERED.**