MILWAUKEE CARPENTER'S DISTRICT COUNCIL HEALTH FUND, Welfare Benefit Plan and Its Trustees; Milwaukee Driver's Health & Welfare Trust Fund, Welfare Benefit Plan and Its Trustees; Operating En-

gineer's Local 139 Health & Benefit Fund, Welfare Benefit Plan and Its Trustees; Wisconsin Health Fund, Welfare Benefit Plan and Its Trustees; individually and on behalf of others similarly situated, Plaintiffs,

v.

PHILIP MORRIS, INCORPORATED; R.J. Reynolds Tobacco Co.; Brown & Williamson Tobacco Corporation; B.A.T. Industries, P.L.C.; British American Tobacco Company, Ltd.; Lorillard Tobacco Company; the American Tobacco Company; Liggett & Myers, Inc.; United States Tobacco Co.; the Tobacco Institute, Inc.; the Council for Tobacco Research U.S.A., Inc.; Smokeless Tobacco Council, Inc.; Hill and Knowlton, Inc.; National Tobacco Co., Inc.; Gerald F. Krause Enterprises, Ltd. d/b/a Friedman Tobacco and Candy Co.; and Unknown Corporations, A–Z, Defendants.

No. 98–C–323, 98–C–394.

United States District Court, E.D. Wisconsin.

Sept. 13, 1999.

Robert P. Goldstein, Ted M. Warshafsky, Frank T. Crivello, II, Warshafsky Rotter Tarnoff, Reinhardt & Bloch, Milwaukee, WI, for Milwaukee Carpenters District Council, Health Fund, Milwaukee Drivers, Health and Welfare Trust Fund, Local 139 International Union of Operating Engineers, Health Benefit Fund, Wisconsin Health Fund, plaintiffs.

Janice L. Tucker, Quarles & Brady, Milwaukee, WI, Michael L. Zaleski, Quarles & Brady, Madison, WI, Dan K. Webb, Thomas J. Frederick, David B. Love, Winston & Strawn, Chicago, IL, for Philip Morris, Inc., Defendant.

James R. Clark, Foley & Lardner, Milwaukee, WI, Thomas F. Gardner, Thomas P. McNulty, Jones Day Reavis & Pogue, for R.J. Reynolds Tobacco Co., Defendant.

Andrew R. McGaan, Michelle H. Browdy, Karen M. Fine, Kirkland & Ellis, Chicago, IL, Kenneth N. Bass, Kirkland & Ellis, Washington, DC, for Brown & Williamson Tobacco Co., Defendant.

Ralph A. Weber, Reinhart Boerner Van Deuren, Norris & Rieselbach, Milwaukee, WI, Mary E. McGarry, Adam I. Stein, Randall R. Rainer, Simpson Thacher & Bartlett, New York, NY, for BAT Industries, PLC, Defendant.

Jeffrey S. Nelson, Bruce R. Tepikian, Shook Hardy & Bacon, Kansas City, MO, Bruce A. Schultz, Coyne Niess Schultz Becker & Bauer, Madison, WI, for Lorillard Tobacco, Co, Defendant.

Reuben A. Mjaanes, Robert V. Atmore, Lindquist & Vennum, Minneapolis, MN, Michael M. Fay, Aaron H. Marks, Marie V. Santacroce, James J. Stricker, Kasowitz Benson Torres & Friedman, New York, NY, for Liggett & Myers Inc., Defendant.

Brian E. Butler, Barbara A. Neider, John A. Hansen, Stafford Rosenbaum Rieser & Hansen, for U.S. Tobacco, Co., Defendant.

John Koeppl, DeWitt Ross & Stevens, Madison, WI, for Tobacco Institute, Inc., Defendant.

John H. Schmid, Jr., Michael J. Modl, Axley Brynelson, Madison, WI, Bruce G. Hart, Steve Klugman, Debevoise & Plimpton, New York, NY, for Council for Tobacco Research, U.S.A., Inc., Defendant.

Bruce M. Ginsberg, Davis & Gilbert, New York, NY, for Hill and Knowlton, Inc., Defendant.

David G. Peterson, Peterson Johnson & Murray, Milwaukee, WI, for National Tobacco Co., Inc., Gerald F. Krause Enterprises, Ltd., Defendants.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiffs, four named health and welfare trusts or plans, filed this lawsuit on March 8, 1998, on behalf of themselves and a proposed class against numerous tobacco manufacturers, tobacco trade organizations, public relations firms, and tobacco distributors. The complaint contains eleven claims, none of which appears, on its face, to be based upon federal law. Plaintiffs and the defendant tobacco distributors

are citizens of Wisconsin. All other defendants are citizens of other states.

Notwithstanding the apparent absence of a federal question and the apparent lack of diversity, defendants removed the case from Milwaukee County Circuit Court to this district, where it was assigned to Magistrate Judge William E. Callahan, Jr. Defendants predicated removal both on 28 U.S.C. § 1331, pointing to the doctrine of complete preemption by § 502(a) of the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a), and on 28 U.S.C. § 1332, asserting the theory of fraudulent joinder of the nondiverse distributor defendants.

Because what was supposed to be a 112 page complaint as filed failed to contain pages 93 through 95, plaintiffs meanwhile, on March 30, 1998, had refiled the complaint—identical except to the extent that it contained all 112 pages—as a second lawsuit in Milwaukee County Circuit Court. That lawsuit was removed by defendants, given case number 98–C–394, and assigned to Magistrate Judge Callahan as well.

Plaintiffs moved to remand both cases. In case number 98–C–323 they also moved for a voluntary dismissal, seeking to proceed only on the second-filed lawsuit. On September 17, 1998, Magistrate Judge Callahan granted both motions to remand and recommended that I deny the motion to dismiss without prejudice to refiling the motion in state court after remand. Defendants appealed[1] the remand orders,[2] and the appeals were assigned to me.

## I. ANALYSIS

### A. Standard of Review

■■■■ A magistrate judge has authority to decide motions to remand, 28 U.S.C.

§ 636(b)(1)(A), although a party may appeal, Fed.R.Civ.P. 72(a); Local Rule § 13.02(b) (E.D.Wis.). I may set aside the magistrate judge's determination, or any portion of it, if defendants show that the order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R.Civ.P. 72(a); Local Rule § 13.02(b) (E.D.Wis.). The "clearly erroneous" review standard applies to factual findings, 12 Charles A. Wright, Arthur R. Miller, Richard L. Marcus, *Federal Practice and Procedure* § 3069 (2d ed.1997), and means that such findings cannot be overturned unless I have a definite and firm conviction that a mistake has been committed. Regarding legal issues, however, the language "contrary to law" invites more lenient, plenary review. *Id.*

This case involves review of legal matters—the types of claims made in the complaint—and thus I review Magistrate Judge Callahan's decision to see whether it was contrary to law.

### B. Motion to Remand

■■■■ As noted by Magistrate Judge Callahan, on a motion to remand the party invoking removal authority bears the burden of establishing this court's jurisdiction over the case, the removal statute is strictly construed against removal, and all doubt is resolved in favor of remand. (*See* R. 38 at 5 (citing cases).) The principle of construction against removal extends to ambiguous pleadings as well. *Eastern States Health and Welfare Fund v. Philip Morris, Inc.*, 11 F.Supp.2d 384, 393 (S.D.N.Y. 1998).

Magistrate Judge Callahan thoroughly set forth the law regarding complete preemption under ERISA, in particular the three-part test of *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482 (7th

---

**1.** Actually, the appeal was brought or joined by all but one defendant, B.A.T. Industries, P.L.C. For ease of reference, however, I will simply use "defendants" to refer to the appealing defendants, ignoring the fact that B.A.T. is not included.

**2.** Magistrate Judge Callahan also granted a motion by defendants for leave to file supplemental authority. Plaintiffs have not appealed that order and it therefore stands. To the extent the same motion was not explicitly granted in case number 98–C–394 it will be.

Cir.1996), and *Rice v. Panchal*, 65 F.3d 637 (7th Cir.1995), for determining whether a claim is within the complete preemptive scope of § 1132(a) and thus invokes federal question jurisdiction. Defendants do not object to the magistrate judge's recitation of law, but rather his opinion that plaintiffs' complaint does not meet all requirements for complete preemption. I do not need to reinvent the wheel; I will repeat only what law is essential for addressing defendants' appeals.

■ The elements of the *Jass* test are as follows: (1) whether the plaintiff is eligible to bring a claim under § 1132(a); (2) whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 1132(a); and (3) whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law. *Jass*, 88 F.3d at 1487.

Section 1132(a) provides for civil enforcement of ERISA by participants, beneficiaries, and fiduciaries of employee benefit plans. As the parties agree that the plaintiffs are neither participants nor beneficiaries of any plans, and the lawsuit does not involve any alleged breach of fiduciary duties, the pertinent part of § 1132(a) for this case can be only subsection (3):

**(a) Persons empowered to bring a civil action**

A civil action may be brought—

. . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provi-

sions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a).

■ Federal courts possess exclusive jurisdiction over suits brought pursuant to this section. 29 U.S.C. § 1132(e); *Administrative Comm., as Adm'r of the Assocs.' Health and Welfare Plan v. Gauf*, 188 F.3d 767, 770 (7th Cir.1999). And the preemptive force of ERISA is so powerful that it converts a state law claim into an action arising under federal law, no matter what the plaintiffs label the claim and no matter whether they want relief under ERISA. *Jass*, 88 F.3d at 1490.

■ Magistrate Judge Callahan found that the plaintiffs do meet the first element of the *Jass* test, as they are fiduciaries of ERISA plans empowered by § 1132(a)(3) to bring a lawsuit. In their brief opposing defendants' appeal plaintiffs dispute this finding, contending that they are merely the funds, and funds themselves are not fiduciaries. Plaintiffs' argument is unpersuasive, especially because their own complaint lists each "fund, welfare benefit plan and its trustees" as a plaintiff in the caption, and plaintiffs at one point in the complaint assert that they, even as trust funds or plans, have "fiduciary duties toward beneficiaries to provide payments for health care costs and to preserve the trust property and funds." (Compl. ¶ 238; *see also* Compl. ¶ 241 ("All plaintiffs have a fiduciary duty to provide such [addiction] treatments.").) An ERISA fiduciary is anyone who has substantial control over the assets, management, or administration of an ERISA plan. 29 U.S.C. § 1002(21)(A);[3] *Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 708 (7th Cir.1999). The plan or fund itself may have substantial control

---

**3.** [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan . . . . 29 U.S.C. § 1002(21)(A).

over the plan's own assets, management and administration. *Cf. Winstead v. J.C. Penney Co.*, 933 F.2d 576, 578 (7th Cir. 1991) (court suggested plans are fiduciaries like trustees when it stated that "it is hard to see why Congress might have wanted to give state courts exclusive, or any, jurisdiction over ERISA declaratory judgment suits *between plans (or trustees of plans)*, when ERISA expressly authorizes participants and beneficiaries, as distinct from fiduciaries, to bring such suits in federal court," but then expressed skepticism that the plan could sue as a fiduciary). The trustees, however, certainly do and are considered fiduciaries. *Id.* at 579; *see Central States, S.E. and S.W. Areas Health and Welfare Fund v. Comprehensive Care Corp.*, 864 F.Supp. 831, 833 (N.D.Ill.1994) (trustee considered fiduciary).

The focus, then, is on elements two and three of the *Jass* test. Defendants claim that these two elements are met for either one of two reasons: First, they say, in many of their claims plaintiffs in essence are bringing a claim for subrogation. According to defendants, not only is a subrogation claim a suit to enforce the terms of the plans the funds have with their participants or beneficiaries and therefore covered by § 1132(a), but it also will require interpretation of the plaintiffs' plan contracts, meeting both parts of the *Jass* test. Second, defendants say, under Wisconsin law plaintiffs' claim for restitution for unjust enrichment can only be pursued if they have no legal remedy. According to defendants, plaintiffs do have a legal remedy—subrogation again—therefore the unjust enrichment claim similarly is preempted by federal law and provides a basis for federal jurisdiction.

As framed by the parties and accepted by the magistrate judge, the main question boils down to whether the plaintiffs' claims can succeed at being considered independent, direct claims by the plaintiffs against defendants rather than indirect, subrogation claims through plaintiffs' participants or beneficiaries. Defendants argue that because the damages plaintiffs claim are essentially equal to the reimbursement of expenditures for benefits provided to participants and beneficiaries, plaintiffs can be pursuing only subrogation claims. Plaintiffs, however, name no individual participants and beneficiaries through which they claim to be subrogated. They describe their causes of action as direct claims and disavow any indirect claim that runs through their participants or beneficiaries. In addition, they claim other possible damages that may not be tied to any particular participant's or beneficiary's medical care, such as their general damages arising from an inability to develop effective anti-smoking programs and provide complete health care information due to defendants' disinformation, and from the defendants' interference with treatment programs for nicotine addicts due to the defendants' manipulation of nicotine.

Each side in this case can point to several, mostly unpublished, cases as authority for its position that plaintiffs' claims are or are not subrogation claims and thus are or are not completely preempted. Several district court cases have addressed whether similar complaints must be remanded, resulting in a split of authority. Plaintiffs cite, for instance, *Teamsters Union No. 142 Health and Welfare Fund v. Philip Morris, Inc.*, 97–CV–667–RM (N.D.Ind. 1998), and *Eastern States*, 11 F.Supp.2d at 393, both of which denied motions to remand because the court found no complete preemption. Defendants cite *Central Illinois Carpenters Health and Welfare Trust Fund v. Phillip Morris, Inc.*, No. 97–CV–568–WDS (S.D.Ill. Mar.16, 1998), and *Massachusetts Laborers' Health and Welfare Fund v. Phillip Morris, Inc.*, No. 97–11552–GAO (D.Mass. June 19, 1998), where complete preemption by ERISA was found to exist and motions to remand therefore were denied. Defendants also cite two Seventh Circuit cases and one district court opinion from the Northern District of Illinois that, although not di-

rectly on point, it contends lead to the conclusion that a health plan's lawsuit to enforce its asserted right to subrogation and reimbursement comes within the scope of § 1132(a) and therefore creates federal question jurisdiction. *See Shannon v. Shannon,* 965 F.2d 542 (7th Cir.1992); *Winstead,* 933 F.2d 576; *Central States,* 864 F.Supp. 831.

Because *Teamsters* and *Central Illinois* are decisions of sister courts within the Seventh Circuit they have slightly more persuasive authority than cases from other districts. In a thoughtful and persuasive opinion Magistrate Judge Callahan indicated his belief that *Teamsters,* which sufficiently rejected any application of *Shannon, Winstead,* and *Central States* to cases such as that before me and found no ERISA preemption, is the better route. Magistrate Judge Callahan agreed with plaintiffs that their complaint sets forth direct claims against the defendants rather than subrogation claims, noting that plaintiffs expressly disavowed any claim that could be construed as one arising out of subrogation. (R. 38 at 16; *see* R. 32 at 4–5 ("Contrary to defendants' argument, plaintiffs do not seek to enforce the terms of any asserted rights to subrogation or reimbursement under any provision of their plans.... Nowhere in the Complaint do the plaintiffs claim they sue as assignees of their participants, either directly or by operation of any subrogation provisions of any plan.").)

■ The parties' arguments and the magistrate judge's decision, however, focus only on the general gist of the majority of plaintiffs' claims. They have failed to analyze the particulars of one claim—count X—that I believe is dispositive of the motions to remand. The default is understandable, as the complaint contains an extremely lengthy recitation of alleged conduct from the 1940s to the present. As stated above, the complaint extends over 112 pages. It asserts eleven claims against fifteen defendants and contains 309 numbered paragraphs, not counting the

prayer for relief, all of which result in difficulty in addressing specific allegations or claims.

■ Although neither the parties nor the magistrate judge addressed count X I have both the authority and the duty to examine the question of subject matter jurisdiction and to determine whether this court has jurisdiction. *Ricketts v. Midwest Nat'l Bank,* 874 F.2d 1177, 1181 (7th Cir.1989) (district court's obligation to review its own jurisdiction is a matter that must be raised *sua sponte* ). Moreover, because the issue of subject matter jurisdiction is a legal one my review of the magistrate judge's decision is plenary. *See* Wright, *Supra.* Finally, § 1132(a)(3) provides an exclusive remedy which Congress has determined can be pursued only in federal court. *See* 29 U.S.C. § 1132. Therefore, if the complaint presents a claim that falls under § 1132(a)(3) the case must be heard in federal court.

Count X, entitled "Interference with Contract," is a direct action by the plaintiffs against the defendants rather than a subrogation claim. Although a lengthy quote, the complaint reads in pertinent part:

294. Defendants are liable to Plaintiffs and Class members for intentionally interfering with Plaintiff Trust Funds' and Class members' past and future business and contractual relationships and prospects with health care providers or plaint [sic] participants and beneficiaries.

295. The Plaintiff Trust Funds and Class members at all relevant times had entered into contractual business relationships with health care providers and plan participants and/or beneficiaries.

296. Such contractual relationships included obligations on the party [sic] of Plaintiff Trust Funds and Class members to pay for certain medical expenses of beneficiaries; obligations on the part of all parties of good faith performance; and obligations on the part

of plan participants and beneficiaries to not intentionally self inflict injury or disease necessitating health care or other payments by Plaintiff Trust Funds or Class members.

. . . .

298. Defendants intentionally interfered with Plaintiff Trust Funds' and the Class members' contractual relationships by the conduct described in this Complaint. . . . Defendants nonetheless induced persons including plan beneficiaries to use Defendants' unsafe tobacco products. . . . Defendants knew their business was to induce persons including plan beneficiaries to smoke and cause injury to themselves. Defendants knew their business activities would directly and dramatically increase health care costs, and burden, disrupt and interfere with the obligations of health care providers and payers such as Plaintiff Trust Funds and the Class members.

. . . .

300. Defendants' interference described above was and remains ongoing

. . . .

301. Plaintiff Trust Funds and the Class members also enjoyed a business expectancy in that the employees covered by their plans would be expected to continue to work and cause contributions to be paid on their behalf for the duration of their working lives.

302. Defendants' conduct described herein prematurely killed or disabled plan participants, preventing them from continuing to work, interfering with Plaintiffs' and the Class members' business expectancies.

303. As a direct, foreseeable, and proximate result of the foregoing conduct of Defendants, Plaintiff Trust Funds and Class members have suffered damages through payments for medical care due to smoking, and in reductions in the premiums collected from or attributable to the plan participants who smoked.

304. Defendants' unlawful conduct will continue unless the relief prayed for in this Complaint is granted.

(Compl. ¶¶ 294–304.) Plaintiffs' prayer for relief includes a request for an injunction restraining defendants from such activity. (Compl. at ¶ XII.3. (requesting injunction against "other" wrongful conduct [4]).)

The contracts with which defendants are alleged to have interfered appear to be employee welfare benefit plans covered by ERISA. Such a plan is one "established or maintained by an employer or by an employee organization, or by both . . . for the purpose of providing for its participants or their beneficiaries . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death . . . ." 29 U.S.C. § 1002(1). The complaint asserts that plaintiffs are "health and welfare trusts or plans in the business of looking after health; paying for health care costs of beneficiaries . . . ," (Compl. ¶ 7), and that "Plaintiffs, and each Class member, have each made payments for health care costs of disease and illnesses," (*id.* ¶ 20). The Milwaukee Carpenter's District Council Health Fund, Welfare Benefit Plan, for instance, is a trust "established and maintained for the purposes of providing health, medical, disability, death and related treatment and care benefits to participating workers, retirees, and their dependents." (Compl. ¶ 31.) It is financed by contributions from employers on behalf of covered employees pursuant to collective bargaining agreements and provides benefits to almost 4,000 persons. In the face of defendants' arguments of ERISA preemption plaintiffs have never disputed that they are ERISA-governed plans with ERISA-governed contracts. They themselves even use ERISA terminology such as "participants" and

---

**4.** Page 110 is missing from the complaint in case 98–C–323 as filed with the court with the removal notice, but was filed in case 98–C–

394. In case 98–C–323 the word "conduct" can be inferred as following "other."

"beneficiaries." The plans discussed in the complaint therefore qualify as "employee welfare benefit plans" under ERISA.

■ Once again, for purposes of this case elements two and three of the *Jass* test are whether the plaintiff's cause of action falls within the scope of § 1132(a)(3) and whether resolution of the claim requires interpretation of an ERISA contract. And § 1132(a)(3) provides for claims by a fiduciary "to enjoin any act or practice which violates any provision of . . . the terms of the plan," or to obtain other appropriate equitable relief "to redress such violations or . . . enforce any provisions of this subchapter or the terms of the plan." Section 1132(a)(3) is not by its terms limited to suits by fiduciaries against plan participants or beneficiaries, but extends to suits against third parties as well—it allows claims to enjoin "*any* act or practice" violating the terms of an ERISA plan. *See Winstead,* 933 F.2d at 579 (one ERISA plan can sue another to enforce a coordination-of-benefits provision); *Heimann v. National Elevator Indus. Pension Fund,* 187 F.3d 493, 503–505 (5th Cir.1999) (§ 1132(a)(3) "not focused on specific areas or types of defendants"); *Blue Cross and Blue Shield v. Weitz,* 913 F.2d 1544, 1548 (11th Cir.1990) (finding "no limitation [in § 1132(a)(3)] on the types of defendants properly subject to an enforcement suit by a fiduciary"); *Central States,* 864 F.Supp. at 834 (similarly finding nothing in express language of § 1132(a)(3) limiting types of defendants to an enforcement lawsuit).

■ I believe that plaintiffs' lawsuit against a third party to enjoin interference with an ERISA plan contract is a claim to enjoin a violation of and to enforce the terms of an ERISA plan. As alleged in the complaint, plaintiffs sue to enforce the provision prohibiting the self-infliction of

injury and disease by participants or beneficiaries—they just sue defendants rather than the participants and beneficiaries because the defendants are allegedly inducing those parties to harm themselves. Furthermore, an element of plaintiffs' tortious interference claim is the interference in the contractual relationship between the plaintiff fiduciaries and their participants and beneficiaries. *See Duct–O–Wire Co. v. U.S. Crane, Inc.,* 31 F.3d 506, 508 (7th Cir.1994); Wis. JI–Civil 2780 (1996).[5] That relationship is a primary concern of ERISA. *See Central States, S.E. and S.W. Areas Health and Welfare Fund v. Neurobehavioral Assocs. P.A.,* 53 F.3d 172, 174 (7th Cir.1995). Congress intended federal courts to develop a federal common law of rights and obligations under a benefits plan. *Neurobehavioral Assocs.,* 53 F.3d at 174; *see Rice,* 65 F.3d at 646. Such a federal common law should not be confined to disputes between just the parties to such plans, but should include protection of those rights and obligations against interference by outside parties. Otherwise, state law will end up regulating whether the important, federal fiduciary-beneficiary relationship is protected.

In addition, the ERISA plan agreement itself will have to be consulted and interpreted in order to determine whether the plan participants and beneficiaries have breached it, whether plaintiffs have been caused to lose a right under the contract, or whether their contract rights have become more costly or less valuable. *See Sampson Invs. by Sampson v. Jondex Corp.,* 176 Wis.2d 55, 72–73, 499 N.W.2d 177 (1993); *see also International Union, United Mine Workers v. Covenant Coal Corp.,* 977 F.2d 895 (4th Cir.1992) (element of Virginia cause of action for tortious interference requiring breach or termination of contractual relationship "necessitates interpretation of the [collective bar-

---

**5.** Pleading a claim of tortious interference requires five elements: (1) a contract or a prospective contractual relationship with a third party, (2) interference with the relationship, (3) intent to interfere, (4) a causal con-

nection between the interference and the damages, and (5) no justification or privilege to interfere on the part of the defendant. *Duct–O–Wire,* 31 F.3d at 508; Wis. JI–Civil 2780 (1996).

gaining] agreement. Only by interpreting a contract can a court determine whether the contract has been breached."). The conduct of the participants and beneficiaries with which defendants must avoid interfering is a function of the plan agreements and requires interpretation of the agreements themselves. The claim will involve review of the quality of the participants' and beneficiaries' performance under the plan agreement and how much of their violative conduct was induced by defendants.

All elements of the *Jass* test therefore are met by count X; it is a federal ERISA claim no matter how plaintiffs labeled it. A recent case out of the Fifth Circuit supports my decision. In *Heimann,* 187 F.3d 493, 509–10, the court found that a health plan participant's claim against a union and its business agent for tortious interference with the contract between the participant and his ERISA plan really stated a claim under both § 1132(a)(1)(B) and 29 U.S.C. § 1140, justifying removal to federal court. And although not an ERISA case, my decision is also supported by *Soth v. Baltimore Sun Co.,* 4 F.Supp.2d 417 (D.Md.1996), *aff'd,* 145 F.3d 1325 (1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 795, 142 L.Ed.2d 658 (1999), in which another district court found a state-law tortious interference claim completely preempted—and thus a basis for federal court jurisdiction—under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), which in regard to complete preemption is similar to ERISA.

So long as any one claim concerned a federal question, the entire case could be removed. 28 U.S.C. § 1441(c). As a result, I need not address at this time whether the other ten claims of the complaint are state or federal or whether the distributor defendants were fraudulently joined. The motions to remand must be denied.

## C. Motion to Dismiss Case Number 98–C–323

■ Magistrate Judge Callahan recommended the denial without prejudice of plaintiffs' motion to dismiss case number 98–C–323, which was the correct recommendation in light of his remand of the case, leaving the issue for the state court to decide. As I have determined that both cases 98–C–323 and 98–C–394 properly remain in federal court, I can now address the merits of the motion to dismiss.

■ The complaint in case number 98–C–323 has never been served upon defendants. In the usual case, a plaintiff has the unilateral right to dismiss the case prior to service. Plaintiffs here, however, require court approval because the case was filed as a class action. Fed.R.Civ.P. 23(e) & 41(a). Court approval is required even though the complaint in 98–C–323 is only a proposed class action, not yet certified. *Baker v. America's Mortgage Servicing, Inc.,* 58 F.3d 321, 324 (7th Cir. 1995).

I see no prejudice to the proposed class members by dismissal of one of two duplicative cases that, to date, have simply caused the class to pay for double paperwork. Defendants apparently agree that no harm will occur to the proposed class, as they really do not object to the dismissal of one of these two duplicative cases.

Instead, defendants object to the dismissal of case number 98–C–323 as opposed to case number 98–C–394. They believe I should dismiss the second-filed case rather than the first to discourage plaintiffs from judge-shopping. The first complaint filed in Milwaukee County Circuit Court was assigned to one judge, while the second (and corrected) complaint filed was assigned to a different Milwaukee County Circuit Court judge. Defendants assert that because plaintiffs had an absolute right to amend the first complaint under Wis. Stat. § 802.90, and should have done so rather than filing a duplicate case, I should infer that they were just trying to obtain a more preferable judge. They argue that I should discourage the practice

by dismissing case number 98–C–394 instead of case number 98–C–323.

While defendants' concern is a valid one, it has little persuasive effect in the current posture of the case. Both cases have been assigned me and I have determined that with me they will remain. While perhaps plaintiffs took a less-preferred route in correcting their complaint, at this point dismissal of the first, rather than the second case, is the more logical move. The complaint in case number 98–C–323 would not only have to be amended but served upon defendants as well, costing the plaintiffs and other proposed class members more expense and delaying the processing of this case even further. The complaint in case number 98–C–394, on the other hand, has already been served and, because it has all intended pages, is ready to go without further expense or delay. As a result, I will grant plaintiffs' motion to voluntarily dismiss case number 98–C–323.[6]

■ The only question remaining is whether notice of the dismissal must first be given to all members of the proposed class pursuant to Fed.R.Civ.P. 23(e), which states that "notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." In *Simer v. Rios,* 661 F.2d 655, 665–66 (7th Cir.1981), the Seventh Circuit held that the notice requirement of Rule 23(e) is not absolutely required in cases that have not been certified; in a case of a proposed rather than certified class, the matter of notice is left to the judge's discretion to assess any prejudice to class members. In this case, I see no prejudice whatsoever to members of the proposed class from the dismissal of the duplicative case and find that notice of the dismissal is not required.

## II. CONCLUSION

**IT IS THEREFORE ORDERED** that Magistrate Judge Callahan's order remanding case 98–C–323 is **REVERSED AND VACATED** and the motion to remand is **DENIED.**

**IT IS ORDERED** that defendants' motions to submit supplemental authority in case 98–C–394 are **GRANTED.**

**IT IS ORDERED** that Magistrate Judge Callahan's order remanding case 98–C–394 is **REVERSED AND VACATED** and the motion to remand is **DENIED.**

**FURTHER, IT IS ORDERED** that plaintiffs' motion to dismiss case number 98–C–323 is **GRANTED** and that case is **DISMISSED WITHOUT PREJUDICE.**

Normally, because case number 98–C–394 was assigned to Magistrate Judge Callahan and only reassigned to me to address the appeals and recommendation, I would instruct the clerk of court to return the file to the magistrate judge for further proceedings. Based on my experience with another multi-defendant, extensive class action that was transferred several times between the magistrate judge and myself for class certification, motions to dismiss, etc., however, I believe that in cases like the present the assignment to a magistrate judge with the concomitant extra level of appeals and objections adds excessive delay to the case and expense to the parties. As a result, the case will remain assigned to me.

Finally, because of the motions to remand and motion to dismiss, no scheduling has yet occurred in case 98–C–394. Therefore,

**IT IS ORDERED** that a scheduling conference will be held October 18, 1999 at 11:00 a.m. in room 204 of the federal courthouse at 517 East Wisconsin Avenue, Milwaukee, Wisconsin. In a case such as this

---

6. In a footnote in their brief, defendants suggest that if I choose not to dismiss the second case rather than the first I could consolidate the two cases. I agree that I could, but do not see why maintaining two cases, even if consolidated, would be preferable to maintaining just one.

having numerous attorneys, I prefer that the conference be conducted in-person unless it would be a great hardship. If, however, a party's attorney cannot reasonably attend in-person, he or she should contact my deputy clerk as soon as possible to arrange for inclusion by telephone. Furthermore, again because of the numerous attorneys appearing in this case, I am setting the status conference several weeks ahead, hoping to minimize requests for rescheduling. In the event any attorney involved in this case has a serious conflict with this date, he or she should attempt to arrange for a substitute to attend or coordinate possible alternate dates with other counsel in advance of contacting the court to request rescheduling.