Christen **HOLCOMBE** and Linda Gollin, on Behalf of Themselves and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

**SMITHKLINE BEECHAM CORPORATION,** d/b/a Glaxosmithkline, and Does 1 through 100, inclusive, Defendant.

No. 02 C 1158.

United States District Court, E.D. Wisconsin.

July 15, 2003.

James J. Murphy, Brookfield, WI, for Plaintiffs.

Amy Power, Atlanta, GA, Brett Ludwig, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiffs Christen Holcombe and Linda Gollin brought this class action in state court against defendant Smithkline Beecham ("SKB"), a manufacturer and distributor of drugs, and other unnamed defendants. Plaintiffs claim that defendants violated state law prohibiting consumer fraud by marketing and distributing Paxil, an allegedly addictive and harmful drug. Pursuant to 28 U.S.C. § 1441(b), SKB removed the case to federal court alleging diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiffs moved to remand, contending that the amount in controversy does not exceed $75,000 as is required to establish diversity jurisdiction. Their motion is before me now.

## I. PLAINTIFFS' ALLEGATIONS

Plaintiffs are Wisconsin citizens, and SKB is a Pennsylvania corporation with its principal place of business in Pennsylvania. Plaintiffs seek to represent a class of Wisconsin consumers who suffered withdrawal symptoms when they discontinued or reduced usage of Paxil. Plaintiffs allege that defendants knew or should have known that Paxil was addictive but failed to warn users and, in fact, fraudulently advertised that the drug was not habit-forming.

Plaintiffs state that the proposed class is comprised of five sub-classes of Wisconsin residents including (a) those who used Paxil prior to a December 14, 2001 label change and suffered harm; (b) those who first used Paxil after the label change and suffered harm; (c) current Paxil users who unsuccessfully attempted to discontinue or reduce usage; (d) users of Paxil before December 14, 2001, who seek restitution for the purchase price; and (e) users of Paxil after December 14, 2001 who seek restitution for the purchase price.[1]

Plaintiffs request various forms of relief including damages, restitution, refunds, equitable, injunctive and declaratory relief as well as attorneys fees and costs. As part of their request for equitable relief, plaintiffs seek the creation of a court-supervised fund to disseminate information to class members about the dangers of Paxil to which defendants would contribute up to $10,000 per plaintiff. With respect to damages, plaintiffs allege that they and each member of the class that they seek to represent seek "total damages of $75,000 or less," (Compl.¶ 21), and that "in no case will any plaintiff's total damages exceed $75,000." (Compl.¶ 39.)

## II. APPLICABLE LEGAL PRINCIPLES

 Under 28 U.S.C. § 1441(b), removal of a state court action is proper where "the district courts … have original jurisdiction." Under 28 U.S.C. § 1332(a)(1), federal courts have original jurisdiction where the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs. On a motion to remand, the party invoking removal authority bears the burden of establishing the court's jurisdiction, the removal statute is strictly construed, and all doubt is resolved in favor of remand. *Milwaukee Carpenter's Dist. Council Health Fund v. Philip Morris, Inc.*, 70 F.Supp.2d 888, 892 (E.D.Wis.1999). Thus, in the present case, SKB has the burden of establishing federal jurisdiction. It is undisputed that the parties are diverse. The only issue is whether the amount in controversy exceeds $75,000.

 When an action is removed based on diversity jurisdiction, the amount claimed by plaintiff in the complaint is presumed to be determinative of the jurisdictional amount. *See Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993) (*citing St. Paul Mercury Indemn. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). When the complaint asks for less than $75,000 in damages or does not allege the value of the relief sought, the defendant must offer "competent proof," *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 179, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), establishing " 'to a reasonable probability' " that the amount in controversy exceeds $75,000. *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir.1993) (quoting *Shaw*, 994 F.2d at 366). In other words, the defendant must prove

---

1. The complaint actually states that subclasses (c) and (d) consist of users of Paxil before December 14, 2001 who seek restitution. I assume, however, that plaintiffs' counsel meant to distinguish between the two subclasses. In any case, the matter has no relevance to the outcome of this motion.

that the court has jurisdiction "by a preponderance of evidence." *Shaw*, 994 F.2d at 366 & 366–67 n. 2 (citing *McNutt*, 298 U.S. at 189, 56 S.Ct. 780).

For purposes of determining the amount in controversy in a class action, the damages of at least one named plaintiff must satisfy the jurisdictional minimum. A party cannot aggregate the damages sought by members of the class. *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997). If the damages of one named plaintiff exceed the jurisdictional amount, the other named plaintiffs and the unnamed class members can remain plaintiffs even though their claims are for less than the jurisdictional amount because the court will have supplemental jurisdiction over their claims pursuant to 28 U.S.C. § 1367. *Id.; Stromberg Metal Works v. Press Mech., Inc.*, 77 F.3d 928, 930–33 (7th Cir. 1996).

Whether the amount in controversy requirement is satisfied is determined by assessing the total relief requested at the time of removal. *See, e.g., Matter of Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir.1992). The court makes this assessment by looking at the plaintiff's state court complaint and the record as a whole. *Shaw*, 994 F.2d at 366. Events occurring subsequent to removal cannot affect the court's jurisdiction. *Id.*

When a plaintiff seeks injunctive relief, the value of such relief for purposes of determining the amount in controversy is "the pecuniary result to either party which the judgment would directly produce." *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 393 (7th Cir.1979); *accord Uhl v. Thoroughbred Tech. and Telecomm.*, 309 F.3d 978, 983 (7th Cir.2002). This is the so-called "either viewpoint" rule, under which the jurisdictional amount is assessed by looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief. In the class action context, the court must look separately at each named plaintiff's claim and the cost to the defendant of complying with an injunction directed to that plaintiff. *Brand Name Drugs*, 123 F.3d at 610. If the cost of complying with an injunction relating to any plaintiff exceeds $75,000, the amount in controversy requirement is satisfied.

## III. DISCUSSION

### A. Whether Plaintiffs May Limit the Value of Their Claims

Plaintiffs argue that they have avoided federal jurisdiction by stating in their Complaint that no individual plaintiff's total damages exceed $75,000. SKB responds that plaintiffs' claims are worth more than $75,000 per plaintiff, and that plaintiffs may not request less than the value of their claims to defeat federal jurisdiction. SKB is wrong; a plaintiff may plead less than the true value of a claim solely to avoid federal court. *St. Paul Mercury Indem. Co.*, 303 U.S. at 294, 58 S.Ct. 586; *Brand Name Prescription Drugs Antitrust Litig.*, 248 F.3d 668, 670–71 (7th Cir.2001); *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir.2000); *Shaw*, 994 F.2d at 366 ("[A] plaintiff may evade federal court by simply asking for less than the jurisdictional amount ... so long as the plaintiff, should she prevail, isn't legally certain to recover more"); *see also* 14B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 3702 (3d ed. 1998) ("Under well-settled principles, the plaintiff is the master of his or her claim; if the plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy. Accordingly, subject matter jurisdiction is absent even though the underlying claim is of a value exceeding the statutory minimum."). Thus, SKB's argu-

ment that plaintiffs may not limit their damage claims fails.

## B. Whether Plaintiffs May Limit the Value of Class Members' Claims

 SKB argues that the named plaintiffs cannot request damages on behalf of members of the proposed class in an amount less than such members might receive without violating their fiduciary duty to the class. However, the law in this circuit does not support SKB's argument. *See Brand Name Drugs,* 248 F.3d at 670–71 ("Had the plaintiffs, before the removal of the case to federal court, stipulated that they were seeking less than [the jurisdictional minimum], the court would have been required to remand the case to state court without further inquiry."); *Brand Name Drugs,* 123 F.3d at 607 ("The plaintiffs in this case, however, because they did not want their case removed to federal court, were careful to plead that the damages sought by each did not exceed [the jurisdictional amount] .... This is plausible .... And plausible or not, a plaintiff can always stay under the minimum amount in controversy by waiving his right to more."); *In re Amino Acid Lysine Antitrust Litig.,* 918 F.Supp. 1181, 1185 (N.D.Ill.1996) (permitting plaintiff to unequivocally commit "each class member to the collection of no more than [the jurisdictional amount]").

Further, strong policy reasons support this rule. The fact that a plaintiff seeks to represent a class does not make the plaintiff any less the master of her own complaint. Like other plaintiffs, class action plaintiffs should be able to make strategic decisions concerning how to plead a case. Judicial concern about a limitation on the value of claims may be addressed when the question of plaintiff's adequacy as a representative is considered. *See Fields v. Oakwood Mobile Homes, Inc.,* 71 F.Supp.2d 1205, 1207–08 (S.D.Ala.1999) (stating that a named plaintiff's limitation on damages

should be considered in connection with class certification but should not be used to deny plaintiff's choice of forum, and that a class member who is unhappy with the limitation can choose to opt out of the class); *see also Seroyer v. Pfizer, Inc.,* 991 F.Supp. 1308, 1316 (M.D.Ala.1997) (stating that courts should not force plaintiffs to seek more damages than they want); *Quebe v. Ford Motor Co.,* 908 F.Supp. 446, 453 n. 6 (W.D.Texas 1995) (noting that any class member who is dissatisfied with plaintiff's waiver of punitive damages can opt out of class and pursue her own remedy).

Thus, SKB's argument that plaintiffs are not ethically free to limit the damage claims of members of the proposed class is rejected.

## C. Punitive Damages

 SKB argues that the Complaint states a claim for punitive damages, and that the effect of such claim is to cause the amount in controversy to exceed $75,000. Although plaintiffs allege that defendants engaged in conduct that, under state law, could give rise to a punitive damage award, plaintiffs do not request punitive damages. Moreover, plaintiffs limit their total damages to $75,000; thus, even if plaintiffs had requested punitive damages, the amount requested would not exceed the jurisdictional minimum.

## D. Attorney's Fees

 SKB argues that plaintiffs' request for attorney's fees causes the amount in controversy to exceed $75,000. Attorney's fees may count toward the amount in controversy when the prevailing party is entitled to recover them as part of damages. *Gardynski–Leschuck v. Ford Motor Co.,* 142 F.3d 955, 956 (7th Cir. 1998). If attorney's fees are awarded as part of costs, they may not be counted

toward the amount in controversy because then they would fall within the rule that "interest and costs" do not count towards the jurisdictional minimum. 28 U.S.C. § 1332(a); *Gardynski–Leschuck,* 142 F.3d at 956. SKB argues that, in the present case, attorney's fees would be part of damages. But even if this were so, plaintiffs' total damage claim is limited to $75,000. Thus, their request for attorney's fees does not cause their damage claim to exceed $75,000.

### E. Request for Equitable Relief

SKB argues that the value of the equitable relief requested by plaintiffs causes the amount in controversy to exceed $75,000. SKB argues that plaintiffs request an injunction against its advertising and the creation of a court supervised fund to provide information to class members regarding medical services, and that the value of each exceeds $75,000. I agree.

### 1. Advertising Injunction

Plaintiffs dispute that they seek to enjoin SKB's advertising. However, in Count III of their Complaint, plaintiffs allege that SKB fraudulently advertised that Paxil was non-addictive and state:

> As a result of [defendant's misleading advertising], each and every day, tens, if not hundreds, of patients are becoming involuntarily addicted/dependent upon Paxil because of defendants' false and misleading representations found both in print and electronic media and/or defendants' material omissions. *Hence, immediate injunctive relief is required to preclude the imminent and irreparable harm to these individuals and the general public.*

(Compl. ¶ 66) (emphasis added). The statement that "immediate injunctive relief is required" cannot be reasonably construed as anything other than a request for an injunction against defendant's advertising.

Further, SKB has established by a preponderance of the evidence that the cost of complying with such an injunction would exceed $75,000. As stated, the value of injunctive relief is determined by either its benefit to the plaintiff or the defendant's cost of compliance. *See McCarty,* 595 F.2d at 393. The defendant's cost is the cost of complying with an injunction in favor of a single plaintiff. *See Brand Name Drugs,* 123 F.3d at 610.

 SKB has submitted an unchallenged affidavit stating that an injunction would require it to pull its advertising at least on a regional basis and to redesign and implement new advertisements. The affidavit further states the cost of these tasks would exceed $75,000 and would do so whether the injunction ran in favor of one plaintiff or of the entire proposed class. An unchallenged affidavit with respect to the cost of complying with an injunction is sufficient to establish the amount in controversy. *See McCarty,* 595 F.2d at 395. Thus, SKB has shown that the cost of complying with plaintiffs' request for an advertising injunction exceeds $75,000.

### 2. Court–Supervised Fund

Plaintiffs request that a court-supervised fund be created for the benefit of members in subclass (c) of plaintiffs' proposed class. Subclass (c) consists of current Wisconsin Paxil users, who unsuccessfully attempted to discontinue or reduce usage. In Count VII of the Complaint entitled "Medical Monitoring and Equitable Relief," plaintiffs state that the purpose of the fund would be to provide for a medical relief program that includes a clearing house for accurate information concerning dependency, withdrawal reactions caused by Paxil and accurate information regarding treatment options for patients addicted to Paxil. The purpose of

the fund would be to assist plaintiffs in subclass (c) by enabling them to safely discontinue their use of Paxil.

■ SKB argues that it will cost it more than $10,000 to establish the fund. However, plaintiffs limit their request to $10,000 per plaintiff; thus, in determining the value of the fund to plaintiffs, I will use this figure. Nevertheless, plaintiffs' request for equitable relief causes the amount in controversy to exceed the jurisdictional minimum. This is so because the Complaint provides that class members may be members of more than one subclass; thus, a class member could belong to both subclass (c), whose members seek only equitable relief, and one of the subclasses requesting damages. The result is that plaintiffs who are members of both subclass (c) and one of the subclasses requesting damages may receive $75,000 in damages plus equitable relief worth $10,000 from the courtsupervised fund. Thus, the combined value of the damages and the equitable relief requested by such plaintiffs exceeds $75,000.

■ Plaintiffs argue that the value of the total relief requested by any single plaintiff does not exceed $75,000. However, their Complaint limits plaintiffs' total damages to $75,000, not the value of the total *relief* requested. Moreover, equitable relief is not damages. *See United States v. Balistrieri*, 981 F.2d 916, 928 (7th Cir.1992). Damages compensate for past harm, whereas equitable relief looks to the future and is preventative in nature. *See Sch. Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis.2d 347, 370–71, 488 N.W.2d 82 (1992) (citing *Pure Milk Prod. Coop. v. Nat'l Farmers Org.*, 90 Wis.2d 781, 280 N.W.2d 691 (1979)); *see also Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 131–32 (3d Cir.1998) (stating that court-supervised programs constitute injunctive relief); *In re Rezulin Prods. Liability Litig.*, 168 F.Supp.2d 136, 152 (S.D.N.Y.2001) (finding

that a request for medical monitoring is a request for equitable relief); *Katz v. Warner–Lambert Co.*, 9 F.Supp.2d 363, 364 (S.D.N.Y.1998) (same).

In the present case, plaintiffs request the creation of a court-supervised fund, which they characterize as equitable relief. They also allege that such relief is necessary to prevent future harm and because damages alone are insufficient. Plaintiffs may have intended to limit the total relief requested to $75,000 but they did not do so. For purposes of determining the amount in controversy, I am ordinarily bound by the request in the complaint. *See Shaw*, 994 F.2d at 366. By requesting $10,000 per plaintiff in equitable relief, plaintiffs cause the amount in controversy to exceed the jurisdictional minimum.

### F. Unnamed Defendants

■ Plaintiffs also name as defendants unknown individuals identified as "Does 1 through 100." For purposes of removal, the citizenship of defendants with fictitious names is disregarded. 28 U.S.C. § 1441(a). However, "[t]he use of fictitious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir.1997); *see also K.F.P v. Dane County*, 110 F.3d 516, 519 (7th Cir.1997). I am unaware of any exceptional circumstances in this case, and so the claims against Does 1 through 100 will be dismissed. However, if plaintiffs wish to add other named defendants or, if they believe that some exceptional circumstances require the use of fictitious names, they may seek leave to amend.

### IV. CONCLUSION

For the reasons stated, I conclude that the amount in controversy exceeds $75,000 for at least one member of the proposed

plaintiff class, and that this court, therefore, has subject matter jurisdiction over the entire action.

**THEREFORE, IT IS HEREBY ORDERED** that plaintiffs' motion to remand is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiffs' claims against Does 1 through 100 are **DISMISSED.**